[ORAL ARGUMENT SCHEDULED ON NOVEMBER 8, 2018]
**No. 18-3052**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

IN RE: GRAND JURY INVESTIGATION

———————————

ANDREW MILLER,

Appellant,

v.

UNITED STATES OF AMERICA,

Appellee.

———————————

On Appeal from the United States District Court for the District of Columbia

———————————

**BRIEF FOR THE UNITED STATES**

———————————

ROBERT S. MUELLER, III
  Special Counsel
MICHAEL R. DREEBEN
JEANNIE S. RHEE
ADAM C. JED
  U.S. Department of Justice
  Special Counsel's Office, Rm. B-103
  950 Pennsylvania Avenue NW
  Washington, D.C. 20530
  (202) 616-0800
  special.counsel@usdoj.gov

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

### A.  Parties and Amici

The appellant is Andrew Miller.  The appellee is the United States of America.
Concord Management and Consulting LLC is participating as an amicus curiae in this
appeal.

### B.  Rulings Under Review

The witness-appellant is appealing from an August 10, 2018 contempt order
issued by Chief Judge Beryl A. Howell, United States District Court for the District of
Columbia, in Case No. 18-gj-34.  ECF No. 36.  The order is reprinted in Appellant's
Appendix B and is unpublished.  The district court's related July 31, 2018 opinion
denying the witness's motion to quash is reprinted in Appendix C and is published at
315 F. Supp. 3d 602 (D.D.C. 2018).

### C.  Related Cases

This case has not previously been before this Court or any other court.  The
merits issue presented by this appeal was addressed in *United States v. Concord Management
and Consulting LLC*, No. 18-cr-32-2 (D.D.C.), appeal docketed, No. 18-3061 (D.C. Cir.),
appeal dismissed Sept. 17, 2018. That opinion can be found at 317 F. Supp. 3d 598
(D.D.C. 2018).

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES

STATEMENT OF THE ISSUES ............................................................... 1

PERTINENT STATUTES AND REGULATIONS ................................... 2

STATEMENT OF THE CASE ................................................................. 2

    A.   Statutory And Regulatory Framework ............................................. 2

    B.   The Special Counsel's Appointment And Jurisdiction ................... 3

    C.   The Present Controversy ................................................................. 5

SUMMARY OF ARGUMENT ................................................................. 6

ARGUMENT ............................................................................................ 9

    I.   The Special Counsel Is An Inferior Officer Under The Appointments
       Clause ........................................................................................... 9

       A.   An inferior officer is one who reports to and is supervised by a
           superior officer .......................................................................... 10

       B.   The Special Counsel reports to and is supervised by the Acting
           Attorney General and is therefore an inferior officer ............... 12

           1.   The Special Counsel is subject to supervision and oversight ....... 13

           2.   The Special Counsel is removable by the Attorney General ....... 18

           3.   The Special Counsel's decision-making authority is subject
               to review and correction ................................................... 21

           4.   The Attorney General retains authority to revoke the Special
               Counsel regulation ........................................................... 22

       C.   Precedent forecloses Miller's principal-officer argument ...................... 26

II.   The Attorney General Has Statutory Authority To Appoint The Special Counsel ................................................................... 30

    A.   Precedent establishes the Attorney General's appointment authority ........................................................................... 30

    B.   Multiple statutes establish the Attorney General's authority ............... 35

        1.   The text of two statutes grants the Attorney General power to appoint special counsels ............................................. 35

        2.   Section 515's history confirms that it provides appointment power ................................................................. 41

III.  The Acting Attorney General Had Authority To Appoint The Special Counsel ................................................................... 45

CONCLUSION ...................................................................... 50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES*

<u>**Page(s)**</u>

**Cases**

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................ 20

*Bennett v. United States*, 285 F.2d 567 (5th Cir. 1960) ........................ 49

*Bowsher v. Synar*, 478 U.S. 714 (1986) ...................................................... 19

*Buckley v. Valeo*, 424 U.S. 1 (1976) ..................................................... 10, 39

*Burnap v. United States*, 252 U.S. 512 (1920) ......................................... 34

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ................................... 25

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ..................... 45

*CTS Corp. v. EPA*, 759 F.3d 52 (D.C. Cir. 2014) ................................ 40

*Department of Transp. v. Association of Am. R.R.*, 135 S. Ct. 1225 (2015) ........................ 35

*Drake v. FAA*, 291 F.3d 59 (D.C. Circ. 2002) ...................................... 25

*\*Edmond v. United States*, 520 U.S. 651 (1997) .............................. 7, 11, 15, 16, 17, 21, 22, 34, 38

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ............... 24

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ................... 12, 20

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ...................................... 20

*Go-Bart Importing Co. v. United States*, 282 U.S. 344 (1931) ............. 21

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................ 25

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ......................... 36

---

\*   Authorities upon which we chiefly rely are marked with asterisks.

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) ...................................................41, 42, 43

*\*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987).............................8, 22, 23, 24, 25, 26, 27
29, 30, 32, 33, 34, 35

*In re Sealed Case*, 838 F.2d 476 (D.C. Cir. 1988) ................................................. 22

*In re United States*, 614 F.3d 661 (7th Cir. 2010) ............................................... 49

*\*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) ...............................................7, 12, 13, 17, 20

*Keyser v. Hitz*, 133 U.S. 138 (1890) .................................................................... 45

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) ............................................................10, 39

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ............................................ 36

*Moog Inc. v. United States*, 1991 WL 46518 (W.D.N.Y. Apr. 1, 1991).................. 48

*Morrison v. Olson*, 487 U.S. 654 (1988) ..................... 3, 8, 10, 11, 19, 20, 22, 27, 28, 29, 39

*Myers v. United States*, 272 U.S. 52 (1926)........................................................ 21

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018)....................................... 26

*Nader v. Bork*, 366 F. Supp. 104 (D.D.C. 1973) ............................................... 23

*Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Circ. 2013) ................................... 47

*Ortiz v. United States*, 138 S. Ct. 2165 (2018)................................................... 39

*OSG Bulk Ships v. United States*, 132 F3d 808 (D.C. Circ. 1998)....................... 26

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ............................... 39

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75 (D.C. Cir. 2018) ........... 28

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989)..................... 28

*Ross v. Blake*, 136 S. Ct. 1850 (2016)............................................................... 42

*Ryan v. United States*, 136 U.S. 68 (1890)......................................................... 46

*Shaw v. United States*, 137 S. Ct. 462 (2016)...................................................... 38

*United States v. Armstrong*, 517 U.S. 456 (1996) ................................................ 26

*United States v. Chemical Foundation*, 272 U.S. 1 (1926) ................................... 15

*United States v. Concord Mgmt. & Consulting LLC*,
    317 F. Supp. 3d 598 (D.D.C. 2018) ..........................6, 15, 16, 20, 23, 26, 27, 33, 37, 39

*United States v. Crosthwaite*, 168 U.S. 375 (1897) .............................................. 41

*United States v. Eaton*, 169 U.S. 331 (1898) ................................................... 29, 39

*United States v. Fields*, 699 F.3d 518 (D.C. Cir. 2012) ........................................ 32

*United States v. Fortuna*, 2013 WL 1737215 (D.N.J. Apr. 22, 2013) .................... 40

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ........................................... 21

*United States v. Guzek*, 527 F.2d 522 (8th Cir. 1975) ........................................... 47

*United States v. Hall*, 171 F.3d 1133 (8th Cir. 1999) ............................................ 49

*United States v. Hasan*, 846 F. Supp. 2d 541 (E.D. Va. 2012) .............................. 40

*United States v. Hasarafally*, 529 F.3d 125 (2d Cir. 2008) ................................... 47

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ....................................... 17, 21

*United States v. Jaramillo*, 745 F.2d 1245 (9th Cir. 1984) .................................... 49

*United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006) ................................ 28, 49

*United States v. Manafort,* 2018 WL 3126380 (E.D. Va. June 26, 2018) ...........14, 15, 27

*United States v. McCoy*, 515 F.2d 962 (5th Cir. 1975) ........................................... 47

*\*United States v. Nixon*, 418 U.S. 683 (1974) ....................3, 8, 13, 22, 27, 30, 31, 32, 35

*United States v. Pellicci*, 504 F.2d 1106 (1st Cir. 1974) ....................................... 47

*United States v. Perkins*, 116 U.S. 483 (1886) ................................................. 19, 20

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ................................ 42

*United States v. Sartori*, 730 F.2d 973 (4th Cir. 1984) .......................................... 49

*United States v. Verdugo-Urquidez,* 494 U.S. 259 (1990) ...................................... 32

*United States v. Winston*, 170 U.S. 522 (1898) ........................................ 42

## Constitutional Provisions

*U.S. Const. Art. II, § 2, cl. 2 .................................................................. 6, 9, 10

## Statutes

5 U.S.C. § 301 ....................................................................................... 3, 25, 29

5 U.S.C. § 553(a)(2) ................................................................................ 23, 24

5 U.S.C. § 701(a)(2) .......................................................................................... 25

5 U.S.C. § 3345 ................................................................................................. 47

5 U.S.C. § 3347(a)(1)(B) ................................................................................. 47

18 U.S.C. § 201(a)(1) ....................................................................................... 39

26 U.S.C. § 7443(f) .......................................................................................... 20

28 U.S.C. § 503 ............................................................................................. 2, 35

28 U.S.C. § 508 ............................................................. 4, 9, 46, 47, 48, 49, 50

28 U.S.C. § 509 ........................................................... 2, 13, 25, 29, 33, 35

28 U.S.C. § 510 ........................................................... 2, 13, 25, 29, 33, 35

28 U.S.C. § 515 ............................................................................ 8, 29, 33, 35

28 U.S.C. § 515(a) ................................................. 2, 25, 36, 37, 38, 41

*28 U.S.C. § 515(b) ........................... 2, 8, 30, 34, 35, 36, 37, 40, 41, 42

28 U.S.C. § 516 ................................................................................................... 2

28 U.S.C. § 528 ......................................................................................... 46, 50

*28 U.S.C. § 533 ........................... 2, 8, 30, 31, 34, 35, 37, 38, 39, 40

28 U.S.C. § 541(a) ........................................................................................... 22

28 U.S.C. § 546(a) ............................................................................. 22

28 U.S.C. § 546(d) ............................................................................. 22

28 U.S.C. § 547 ........................................................................... 21, 40

28 U.S.C. §§ 591-599 (expired) .......................................................... 3

49 U.S.C. § 323(a) ............................................................................. 38

Act of Apr. 17, 1930, Pub. L. No. 71-133, 46 Stat. 170 ................... 43

Act of Aug. 2, 1861, ch. 37, 12 Stat. 285 ......................................... 22

Act of Aug. 30, 1890, ch. 837, 26 Stat. 371 ..................................... 43

Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854 ................... 43

Act of June 25, 1948, Pub. L. No. 80-773, § 3, 62 Stat. 869 ........... 43

Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305 ........................... 43

Act of Mar. 3, 1891, ch. 542, 26 Stat. 948 ....................................... 43

Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133 ..................................... 43

Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367 .................. 43

Act to establish the Department of Justice, ch. 150, 16 Stat. 162 (1870) .............. 41, 48

Ethics in Government Act of 1978, Pub. L. No. 95-521, §§ 601-602,
    92 Stat. 1824 ............................................................................... 44

First Judiciary Act, 1 Stat. 73 (1789) ............................................... 22

Payne-Aldrich Tariff Act of 1909, Ch. 6, § 28, 36 Stat. 11 ........ 44, 45

S.J. Res. No. 54, Feb. 8, 1924, 43 Stat. 5 ......................................... 44

## Rules

Fed. R. Crim. P. 25(a)(1) ................................................................. 49

## Regulations and Administrative Materials

28 C.F.R. § 0.15(a) ................................................................................... 4

28 C.F.R. § 45.2(a) ................................................................................. 46

28 C.F.R. §§ 600.1-600.10 ...................................................................... 3

28 C.F.R. § 600.1 ................................................................................... 38

28 C.F.R. § 600.4(a) .........................................................................14, 18, 27

28 C.F.R. § 600.4(b) .........................................................................14, 18, 27

28 C.F.R. § 600.5 .................................................................................. 18

28 C.F.R. § 600.6 .................................................................................. 22

28 C.F.R. § 600.7(a) ..........................................................................14, 18

28 C.F.R. § 600.7(b) ..................................................................13, 14, 15, 17, 21, 27

28 C.F.R. § 600.7(c) .............................................................................. 18

28 C.F.R. § 600.7(d) ..................................................................... 17, 19, 20, 27

28 C.F.R. § 600.8(a)(1) .......................................................................... 18

28 C.F.R. § 600.8(a)(2) ....................................................................18, 19

28 C.F.R. § 600.8(b) ............................................................................. 14

28 C.F.R. § 600.8(c) ............................................................................. 27

*Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) .................3, 13, 15, 20, 23, 24

## Legislative Materials

H.R. Rep. No. 229, 71st Cong., 2d. Sess. (1930) ................................................ 43

H.R. Rep. No. 2901, 59th Cong., 1st. Sess. (1906) .............................................. 42

S. Rep. No. 250, 105th Cong., 2d Sess. (1998) .................................................. 47

**Other Authorities**

*Acting Officers*, 6 Op. O.L.C. 119 (1982) ............................................................. 45

*Application of Conflict of Interest Rules to the Conduct of Government
    Litigation by Private Attorneys*, 4B Op. O.L.C. 434 (1980) ............................... 44

*Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115 (1986) ........ 44

Attorney General Jeff Sessions Prepared Remarks to the United States
    Senate Select Committee on Intelligence (June 13, 2017), *available at*
    https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-
    prepared-remarks-united-states-senate-select-committee ......................................... 46

*Black's Law Dictionary* (10th ed. 2014) ...................................................35, 46, 47

*Congressional Subpoenas of Department of Justice Investigative Files*,
    8 Op. O.L.C. 252 (1984) ................................................................................. 49

H. Campbell Black, *A Dictionary of Law* (1st ed. 1891) .................................... 43

Justice Manual, *available at*
    https://www.justice.gov/usam/united-states-attorneys-manual ............................ 14

*Merriam-Webster's Dictionary Online*, *available at*
    https://www.merriam-webster.com/dictionary/disability) ....................................... 47

*Naval Court-Martial*, 18 Op. Att'y Gen. 135 (1885) ........................................... 44

Office of the Deputy Att'y Gen., Order No. 3915-2017,
    *Appointment of Special Counsel to Investigate Russian Interference with the
    2016 Presidential Election and Related Matters*, May 17, 2017, *available at*
    https://www.justice.gov/opa/press-release/file/967231/download..............4, 13, 27

*Oxford English Dictionary Online*,
    *available at* http://www.oed.com/view/Entry/53381 .................................. 48

P. Peters, *The Cambridge Guide to English Usage* (2004) .................................. 36

Press Release, Attorney General Sessions Statement on Recusal (Mar. 2, 2017),
    *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-
    statement-recusal. ......................................................................................... 4

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on
    Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017),
    *available a*t https://www.fbi.gov/news/testimony/hpsci-hearing-titled-
    russian-active-measures-investigation. .......................................................................... 4

*United States Attorneys—Suggested Appointment Power of the Attorney General—
    Constitutional Law (Article II, § 2, cl. 2)*, 2 Op. O.L.C. 58 (1978) .................................. 21

No. 18-3052

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

IN RE: GRAND JURY INVESTIGATION

————————————

ANDREW MILLER,

Appellant,

v.

UNITED STATES OF AMERICA,

Appellee.

————————————

On Appeal from the United States District Court for the District of Columbia

————————————

## BRIEF FOR THE UNITED STATES

————————————

## STATEMENT OF THE ISSUES

1. Whether the Special Counsel is an inferior officer under the Constitution's Appointments Clause.

2. Whether the Attorney General has statutory authority to appoint the Special Counsel.

3. Whether the Acting Attorney General had authority to appoint the Special Counsel in this case.

## PERTINENT STATUTES AND REGULATIONS

Pertinent provisions are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

This is an appeal from an order holding appellant Andrew Miller in contempt following the district court's denial of his motion to quash grand jury subpoenas. Miller contended that the appointment of Special Counsel Robert S. Mueller, III, violated the Appointments Clause of the Constitution. The district court rejected that claim.

### A. Statutory And Regulatory Framework

The Attorney General is the head of the Department of Justice and has exclusive authority (except as otherwise provided by law) to direct "the conduct of litigation" on behalf of the United States. 28 U.S.C. §§ 503, 516. Congress has "vested" in the Attorney General virtually "[a]ll functions of other officers of the Department of Justice," *id.* § 509, and empowered him to authorize other Departmental officials to perform his functions, *id.* § 510. Congress has also authorized the Attorney General to commission attorneys "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General or special attorney[s]" and provided that "any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal  * * *  which United States attorneys are authorized by law to conduct." *Id.* § 515(a) and (b). Congress has also provided for the Attorney General to "appoint officials  * * *  to detect and prosecute crimes against the United States." *Id.* § 533(1).

2

These statutes authorize Attorneys General to appoint special counsels and define their duties. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 694 (1974).

The Attorney General has issued a regulation providing an internal framework for certain special-counsel appointments. 28 C.F.R. §§ 600.1-600.10; *see also* 5 U.S.C. § 301 (authorizing the head of a department to issue regulations "for the government of his department" and "the distribution and performance of its business"); *Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999). The Special Counsel regulation "replace[d]," 64 Fed. Reg. at 37,038, the independent counsel regime formerly provided in Title IV of the Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired); *see Morrison v. Olson*, 487 U.S. 654 (1988). The Ethics in Government Act had required the Attorney General in certain cases to ask a court to appoint an independent counsel, who then operated with significant statutory freedom from Department of Justice supervision. The Special Counsel regulation, in contrast, provides for a wholly Executive Branch procedure for appointing a special counsel, who exercises discretion "within the context of established procedures of the Department," with "ultimate responsibility for the matter and how it is handled * * * continu[ing] to rest with the Attorney General." 64 Fed. Reg. at 37,038. The regulation seeks "to strike a balance between independence and accountability in certain sensitive investigations." *Id.*

## B. The Special Counsel's Appointment And Jurisdiction

On March 20, 2017, then-Federal Bureau of Investigation ("FBI") Director James B. Comey confirmed to the House Permanent Select Committee on Intelligence

3

that the FBI was investigating Russian interference with the 2016 presidential election and "any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts." Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation. "As with any counterintelligence investigation," Comey stated, "this will also include an assessment of whether any crimes were committed." *Id.*

On March 2, 2017, Attorney General Jeff Sessions recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States." Press Release, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal. As the Attorney General noted, *id.*, the Deputy Attorney General in those circumstances exercises the authority of the Attorney General, *see* 28 U.S.C. § 508; 28 C.F.R. § 0.15(a).

On May 17, 2017, the Acting Attorney General (pursuant to Section 508) issued an order appointing Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters." Office of the Deputy Att'y Gen., Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017 ("Appointment Order") (capitalization omitted). Relying on "the authority vested" in

4

the Acting Attorney General, "including 28 U.S.C. §§ 509, 510, and 515," the Acting Attorney General ordered the appointment of a Special Counsel "in order to discharge [the Acting Attorney General's] responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election." *Id.* (introduction). The Acting Attorney General made applicable to the Special Counsel "Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations." *Id.* ¶ (d).

## C. The Present Controversy

On May 10, 2018, the Special Counsel served Miller with a grand jury subpoena requiring that he testify and produce documents. B1; C19.[1] On June 28, Miller moved to quash the subpoena, raising constitutional and statutory challenges to the Special Counsel's appointment. B2; C22. On July 31, the district court denied his motion. *See* C3, 92; D1. Miller moved to be held in civil contempt, and the Special Counsel moved to compel the testimony. B2. On August 10, the district court granted both requests,

---

[1] Miller's appendix is not consecutively paginated but instead divided into lettered parts. This brief refers to appendix pages by part and page number. Since the docket is reproduced at Appendix A, it is cited as A1-A7. The contempt order is reproduced at Appendix B, and pages in that order are cited as B1-B3. Similarly, the opinion and order denying the motion to quash are reproduced at Appendices C and D respectively and are accordingly cited as C1-C92 and D1. "Br." refers to Miller's brief. "Concord Br." refers to the amicus brief filed by Concord Management and Consulting LLC.

found Miller in civil contempt, and stayed the contempt order pending appeal. B3. On August 13, Miller filed a timely notice of appeal. A7.

Miller based his motion to quash on a separate motion to dismiss the indictment filed by defendant Concord Management and Consulting LLC in *United States v. Internet Research Agency et al.*, No. 18-cr-32 (D.D.C.), which Miller adopted by reference and attached to his motion. Judge Dabney L. Friedrich denied Concord's motion to dismiss on August 13, 2018. *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598 (D.D.C. 2018). On August 30, this Court denied Concord's motion to intervene but allowed it to participate as amicus curiae.

## SUMMARY OF ARGUMENT

The Special Counsel's appointment is consistent with the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2. He qualifies as an "inferior Officer" who may be appointed by the Head of a Department. Congress has provided "by law" for this method of appointment. And the Deputy Attorney General properly assumed the role of Acting Attorney General for this investigation upon the Attorney General's recusal from the matter.

I. A. Under the Appointments Clause, Congress may by law provide for the Head of a Department to appoint an "inferior Officer." Supreme Court precedent establishes that an "officer"—one who exercises significant authority under the laws of the United States—is "inferior" if he is subject to direction and supervision at some

level by Presidentially-appointed and Senate-confirmed officers. *Edmond v. United States*, 520 U.S. 651, 663 (1997).

B.  The factors this Court distilled from *Edmond* to assess whether an officer is "inferior"—degree of oversight, removability, and decisionmaking authority—support inferior-officer status here. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1340 (D.C. Cir. 2012).

Under the Special Counsel regulation, the Special Counsel is subject to substantial direction and oversight by the Attorney General.  The Attorney General defines the Special Counsel's jurisdiction; the Special Counsel must comply with Departmental procedures; the Special Counsel must report important events to the Attorney General; and the Attorney General may countermand decisions that depart from established Departmental practice.

As for removal, the Special Counsel may be discharged for misconduct, dereliction of duty, and good cause, including violation of Department policies.  He can also be removed by the Attorney General's termination of his investigation in annual budget reviews.  These mechanisms provide ample means of control.

Finally, the Special Counsel's decisions are subject to review by the Attorney General, who may require an explanation for any investigative or prosecutorial step and countermand it when it is so unwarranted or inappropriate that it should not be pursued.  That review gives deference to the Special Counsel, but *Edmond* makes clear that a deferential standard of review is still consistent with inferior-officer status.

7

In any event, if the Attorney General deems it appropriate, he can revoke the Special Counsel regulation and directly supervise the Special Counsel under statutory authority, which would allow termination at will. That option ensures that the Special Counsel is, for constitutional purposes, subordinate to the Attorney General.

C.   Precedent establishes that the Special Counsel is an inferior officer. Comparable officers for this purpose were held to be inferior in *Morrison v. Olson*, 487 U.S. 654, 671 (1988), and *In re Sealed Case*, 829 F.2d 50, 56 (D.C. Cir. 1987). The result in this case is *a fortiori*.

II.   Congress has vested the Attorney General with statutory authority to appoint special counsels.

A.   Precedent establishes that the Attorney General has statutory authority to appoint the Special Counsel. In *United States v. Nixon*, 418 U.S. 683, 694 (1974), the Supreme Court held that 28 U.S.C. §§ 515 and 533 authorized the appointment of a special prosecutor comparable to the Special Counsel. This Court likewise found appointment authority in *Sealed Case*, 829 F.2d at 55, citing Section 515. Those holdings govern here.

B.   The text and history of Section 515 and 533 confirm that they confer appointment authority. Section 515(b) empowers the Attorney General to commission attorneys who are "specially retained under authority of the Department of Justice" as "special assistant to the Attorney General or special attorney." Section 533 confirms that "[t]he Attorney General may appoint officials—(1) to detect and prosecute crimes

8

against the United States." Attorneys General have long used these powers to appoint special attorneys with responsibilities like the Special Counsel's, with consistent support from Congress, the Executive Branch, and the courts.

III. Finally, the Acting Attorney General acted as the Head of a Department in appointing the Special Counsel. Under 28 U.S.C. § 508, the Deputy Attorney General may assume the Attorney General's functions upon a disability. The legally mandated recusal of the Attorney General from participating in a matter constitutes such a disability.

Contrary to Miller's contentions, the Federal Vacancies Reform Act is not the exclusive means to assume "acting" status; laws like Section 508 are specifically preserved as alternative authority. And under longstanding definitions, a recusal under law constitutes a disability permitting acting status. Any other rule would deprive the Department of Justice of the power to act if its head is legally required to recuse in a particular matter. Congress cannot have intended such an illogical result.

## ARGUMENT

## I.   The Special Counsel Is An Inferior Officer Under The Appointments Clause

The Constitution's Appointments Clause provides the means for appointing all officers of the United States. U.S. Const. Art. II, § 2, cl. 2. By default, officers must be nominated by the President and confirmed by the Senate. But Congress may "vest" the power to appoint "inferior Officers" in the President alone, courts, or a "Head[] of

Department[]." *Id.* It is undisputed that the Special Counsel is an officer and the Appointments Clause applies. *See Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (officers are those who "'exercis[e] significant authority pursuant to the laws of the United States'") (*quoting Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)).

Miller argues that the Special Counsel's "appointment [was] unconstitutional because he is a principal Officer not appointed by the President with the advice and consent of the Senate." Br. 14 (some capitalization omitted). That argument fails. Under governing authority, the Special Counsel qualifies as an "inferior Officer" who may be appointed by the head of a department because he is subject to supervision and oversight by the Attorney General. That conclusion is confirmed by controlling precedent addressing prosecutors vested with comparable authority to the Special Counsel.

## A.    An inferior officer is one who reports to and is supervised by a superior officer

Supreme Court authority establishes that the governing test for an identifying an "inferior Officer" asks whether the official is subject to supervision and oversight by other officers appointed by the President with Senate consent.

In *Morrison v. Olson*, 487 U.S. 654, 671 (1988), the Supreme Court held that an independent counsel appointed by a Special Division of the D.C. Circuit pursuant to the Ethics in Government Act "clearly falls on the 'inferior officer' side" of the principal/inferior officer line. The Court explained that the independent counsel was

"subject to removal by a higher Executive Branch official" for good cause, which "indicate[d] that [the independent counsel] [was] to some degree 'inferior' in rank and authority." *Id.* at 663, 671. The independent counsel was also empowered "to perform only certain, limited duties" involving "investigation and, if appropriate, prosecution for certain federal crimes." *Id.* In addition, the independent counsel's office was "limited in jurisdiction," *id.* at 672, and temporary, in that the office is terminated when the independent counsel's "single task * * * is over." *Id.*

In *Edmond v. United States*, 520 U.S. 651, 666 (1997), the Court held that civilian members of the Coast Guard Court of Criminal Appeals "are 'inferior Officers' within the meaning of" the Appointments Clause. Although two of the *Morrison* factors— narrow jurisdiction and limited tenure—did not apply to Coast Guard judges, the Court explained that *Morrison* did not set forth "a definitive test for whether an officer is 'inferior' under the Appointments Clause." *Id.* at 661. Rather, the Court found it "evident that 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Id.* at 663. Because the Judge Advocate General exercised administrative oversight over the Coast Guard Court of Criminal Appeals, which included the power to remove judges without cause, *id.* at 664, and the Court of Appeals for the Armed Forces could reverse the Coast Guard Court of Criminal Appeals' decisions, *id.* at 664-665, the Court concluded that the judges were "'inferior Officers,'" *id.* at 666.

11

In *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010), the Court quoted *Edmond* as holding that "[w]hether one is an inferior officer depends on whether he was a superior." The Court added, quoting *Edmond*, that "inferior officers are officers whose work is directed and supervised at some level by other officers appointed by the President with the Senate's consent." *Id.* (quotation marks omitted).

In *Intercollegiate Broadcasting System v. Copyright Royalty Board*, *Inc.,* 684 F.3d 1332 (D.C. Cir. 2012), this Court applied these decisions in concluding that Copyright Royalty Judges were principal officers. The court distilled from *Edmond* three relevant factors: whether the officer is (1) "subject to the substantial supervision and oversight" of a principal officer, (2) removable without cause, and (3) able to render a final decision on behalf of the United States. *Id.* at 1338. Because Copyright Royalty Judges had "vast discretion over  * * *  rates and terms," *id.* at 1339, could be removed "only for misconduct or neglect of duty," *id.* at 1340, and could not have their rate determinations reversed or corrected by anyone else within the executive branch, *id.*, the court concluded that the Judges were principal officers, *id.*

## B.  The Special Counsel reports to and is supervised by the Acting Attorney General and is therefore an inferior officer

Under the analysis in those cases, the Special Counsel is an "inferior Officer" under the Special Counsel regulation because the Acting Attorney General supervises the Special Counsel's work, may remove him from office, and may review and

12

countermand his decisions.  And, as an additional means of exercising control, the Acting Attorney General can rescind the regulation at any time and exercise direct statutory supervision over the Special Counsel.

### 1.  The Special Counsel is subject to supervision and oversight

First, the Special Counsel is "subject to the substantial supervision and oversight" of the Acting Attorney General.  *Intercollegiate Broad.*, 684 F.3d at 1338.  The Special Counsel's existence depends on the Acting Attorney General, who appointed him and delegated to him powers that are otherwise vested in the Attorney General alone.  *See* 28 U.S.C. §§ 509, 510; Appointment Order (introduction and ¶¶ (a)-(d)).  And because "[a]ll functions of other offices of the Department of Justice * * * are vested in the Attorney General" 28 U.S.C. § 509, the Acting Attorney General has plenary statutory authority to supervise the Special Counsel.

The regulatory provisions made applicable to the Special Counsel provide further means of direction and supervision.  Appointment Order ¶ (d); *see United States v. Nixon*, 418 U.S. 683, 696 (1974) (while extant, the regulations bind the Executive Branch).  While "[t]he Special Counsel shall not be subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b), the regulation ensures "that ultimate responsibility for the matter [the Special Counsel is appointed to investigate and, if appropriate, prosecute] and how it is handled will continue to rest with the Attorney General."  *Office of Special Counsel*, 64 Fed. Reg. 37,038, 37,038 (July 9, 1999).

As an initial matter, the regulation instructs the Attorney General to define the Special Counsel's jurisdiction and requires the Special Counsel to obtain approval from the Attorney General if he "concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his * * * investigation." 28 C.F.R. § 600.4(a)-(b). "The Special Counsel regulations also make clear that the Special Counsel remains subject to the Attorney General's oversight following the Special Counsel's appointment, notwithstanding the specific grant of original jurisdiction." *United States v. Manafort*, 2018 WL 3126380, at *10 (E.D. Va. June 26, 2018). For example, in operating within his assigned jurisdiction, the Special Counsel must "comply with the rules, regulations, procedures, practices and policies of the Department of Justice," including "required review and approval procedures by the designated Departmental component[s]." 28 C.F.R. § 600.7(a). As the investigation progresses, the Special Counsel is required to "notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports," 28 C.F.R. § 600.8(b), which require, among other things, advance reports of "major developments in significant investigations and litigation." Justice Manual § 1-13.100. And "[u]pon request," the Special Counsel must "provide an explanation for any investigative or prosecutorial step" to the Attorney General. 28 C.F.R. § 600.7(b). The Special Counsel may not take any action that the Attorney General finds "is so inappropriate or unwarranted under established

14

Departmental practices that it should not be pursued." *Id.* § 600.7(b). The regulation thus "explicitly acknowledge[s] the possibility of review of specific decisions reached by the Special Counsel." *Office of Special Counsel*, 64 Fed. Reg. at 37,038.

Miller makes two arguments for why the Special Counsel is not subject to the Acting Attorney General's substantial supervision and oversight. First, Miller asserts that, "[i]n practice, the Acting [Attorney General] appears to take a deferential[,] hands-off approach to the work of the Special Counsel." Br. 20. But the test for supervision in Appointments Clause analysis turns on structural arrangements fixed by law, not on a particular means of exercising those powers. *United States v. Concord Mgmt. & Consulting LLC* ("*Concord*"), 317 F. Supp. 3d 598, 608 (D.D.C. 2018) ("Statutes and regulations provide the framework for evaluating the direction and supervision of the Special Counsel"); *see, e.g.*, *Edmond*, 520 U.S. at 664-665. Miller cites no law supporting his contrary position. In any event, "the presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926). Miller cites no evidence to overcome that presumption, and, in fact, supervision under the regulations has occurred. *See, e.g., Manafort*, 2018 WL 3126380, at *10 (discussing Acting Attorney General's post-appointment scope memorandum).

Second, Miller urges that the Special Counsel is not subject to the Attorney General's substantial supervision and oversight because the Attorney General may not

"'countermand[] a decision with which he disagrees, no matter how vehemently, so long as the decision does not rise to the level of so inappropriate or unwarranted under established Departmental practices.'"  Br. 21 (quoting *Concord*, 317 F. Supp. 3d at 611-612) (some quotation marks omitted).  That argument is unsound.

*Edmond* does not require that a superior retain plenary authority to countermand all of his subordinate's decisions in order for the subordinate to be considered an inferior officer.  In *Edmond*, neither the Judge Advocate General nor the Court of Appeals for the Armed Forces had "complete" control over Coast Guard judges: the Judge Advocate General could not "attempt to influence (by threat of removal or otherwise) the outcome of individual proceedings" and had "no power to reverse decisions of the court"; and while the Court of Appeals had the power to reverse Coast Guard judge's decisions, it exercised a "narrow[]," deferential level of review.  520 U.S. at 664-665.  The Supreme Court nonetheless found that the Coast Guard judges were inferior officers because their work was "directed and supervised *at some level* by others who were appointed by presidential nomination with the advice and consent of the Senate."  *Id.* at 663 (emphasis added).

The Special Counsel readily meets this test.  The Attorney General receives a regular flow of information about the Special Counsel's actions; he can demand an explanation for any of them; and he has power to intervene when he deems it appropriate to prevent a deviation from established Departmental practices.  The regulation envisions deference by requiring the Attorney General to stay his hand unless

16

he determines that an action is "*so* inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.7(b) (emphasis added). But while the Attorney General must "give great weight to the views of the Special Counsel," *id.*, the provision affords the Attorney General discretion to assert control if he finds the applicable standard satisfied. This authority—coupled with the Attorney General's latitude to terminate the Special Counsel for "good cause, including violation of Departmental policies," 28 C.F.R. § 600.7(d)—provides substantial means to direct and supervise the Special Counsel's decisions.

Beyond that, the concept of "supervision and oversight" takes into account a variety of other mechanisms of control besides plenary authority over each and every decision. In *Edmond*, for example, the Court emphasized the Judge Advocate General's "administrative oversight over" Coast Guard judges. 520 U.S. at 664; *see also Intercollegiate Broad.*, 684 F.3d at 1338 (explaining that Copyright Royalty Judges were "supervised in some respects by the Librarian [of Congress]" because the Librarian, among other things, issued ethical rules for the Judges and oversaw various logistical aspects of their duties). Similarly, in *United States v. Hilario*, 218 F.3d 19, 26 (1st Cir. 2000), the First Circuit found that United States Attorneys are inferior officers because they are subject to a "pervasive  * * *  supervisory regime," under which the Attorney General could require them to file reports, fix their salaries, authorize their office expenses, and approve their staffing decisions.

17

The Special Counsel is subject to equally "pervasive" administrative supervision and oversight. The Attorney General controls whether to appoint a Special Counsel and the scope of his jurisdiction. 28 C.F.R. § 600.4(a)-(b). Once appointed, the Special Counsel must comply with Justice Department rules, regulations, and policies. *Id.* § 600.7(a). He must "request" that the Attorney General provide Department of Justice employees to assist him or allow him to hire personnel from outside the Department. *Id.* § 600.5. The Special Counsel and his staff are "subject to disciplinary action for misconduct and breach of ethical duties under the same standards and to the same extent as are other employees of the Department of Justice." *Id.* § 600.7(c). And, each year, the Attorney General "establish[es] the budget" for the Special Counsel and "determine[s] whether the investigation should continue." *Id.* § 600.8(a)(1)-(2). The Attorney General's initial control over the existence and scope of the Special Counsel's investigation; his ongoing control over personnel and budgetary matters; his power to impose discipline for misconduct or a breach of ethical duties; and his authority to end the investigation afford the Attorney General substantial supervision and oversight, which supplements the Attorney General's regulatory power to countermand the Special Counsel's investigative and prosecutorial decisions.

## 2. The Special Counsel is removable by the Attorney General

The Attorney General's broad power to remove the Special Counsel under the regulation also supports the conclusion that he is an inferior officer. The Special Counsel is removable for "misconduct, dereliction of duty  * * *  or for other good

18

cause, including violation of Departmental policies." 28 C.F.R. § 600.7(d). The Special Counsel may also be removed by the Attorney General's decision to terminate the investigation at the end of a fiscal year, *id.* § 600.8(a)(2), which would automatically close the Special Counsel's office. To the extent that removal authority serves as a strong mechanism for control, the Attorney General's power to end an investigation provides significant control.

Miller focuses only on the "good cause" language in Section 600.7(d), erroneously urging that this factor reinforces his claim that the Special Counsel is a principal officer. Br. 22-23. But Section 600.7(d) sweeps beyond "good cause" alone. It includes "misconduct"—such as the failure to follow an order from the Attorney General that is lawful under the regulation—and the "violation of Departmental policies." It also includes "dereliction of duty," which, like "neglect of duty," is a "very broad" term that "could sustain removal of a [special counsel] for any number of actual or perceived transgressions of the [Attorney General's] will." *Bowsher v. Synar*, 478 U.S. 714, 729 (1986).

Even if the regulation's removal provision were limited to "good cause" alone, that would not transform the Special Counsel into a principal officer. The Supreme Court has expressed "no doubt that when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest." *United States v. Perkins*, 116 U.S. 483, 485 (1886). The Court has never questioned that principle. *See Morrison*, 487 U.S. at 689

n.27 (citing *Perkins* with approval); *id.* at 724 & n.4 (Scalia, J., dissenting) (same).

Although "good cause" removal protection in combination with the other factors may

support a finding of principal officer status, *see, e.g.*, *Intercollegiate Broadcasting*, 684 F.3d at

1339-1340, it does not mandate such a finding standing alone. For example, the special

trial judges of the Tax Court found to be inferior officers in *Freytag v. Commissioner*, 501

U.S. 868, 881 (1991), were removable only "after notice and opportunity for public

hearing" and only "for inefficiency, neglect of duty, or malfeasance in office, but for no

other cause." 26 U.S.C. § 7443(f). And the independent counsel in *Morrison* was

removable only for good cause. 487 U.S. at 671, 686, 689. "Good cause" is "susceptible

to broad readings" that can ensure ample control over a subordinate's action, and under

such readings, the Special Counsel regulation imposes "only minimal restrictions" on

removal. C44-C45 & n.19 (discussing broad interpretations of similar removal

restrictions); *Concord*, 317 F. Supp. 3d at 612-613 (same). Given the intent of the

regulation to preserve the Attorney General's "ultimate responsibility" for the Special

Counsel's actions, 64 Fed. Reg. at 37,038, a broad reading is entitled to deference, *Auer*

*v. Robbins*, 519 U.S. 452 (1997), and, accordingly, the removal power in the Special

Counsel regulation provides a significant mechanism for control.[2]

---

[2] If, notwithstanding the foregoing, Section 600.7(d)'s removal provision "did somehow
elevate the Special Counsel to principal officer status, the proper remedy would be to
void the removal provision rather than the Special Counsel's appointment." C45 n.21;
*see, e.g.*, *Free Enterprise Fund*, 561 U.S. at 508-510; *Intercollegiate Broad.*, 684 F.3d at 1340-
1341.

### 3. The Special Counsel's decision-making authority is subject to review and correction

Finally, the Special Counsel is not a principal officer under the regulation because he does not have unlimited authority to make final decisions on behalf of the United States. *See* 28 C.F.R. § 600.7(b). The scope of Attorney General review of Special Counsel decisionmaking is "narrower" than plenary review, but "[t]his limitation upon review does not  * * *  render the [Special Counsel a] principal officer[]." *Edmond*, 520 U.S. at 665. "What is significant is that the [Special Counsel] ha[s] no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers." *Id.*; *see* C28 (same).

Miller asserts that the Special Counsel has the authority to make final decisions on behalf of the United States because the regulation "nowhere require[s] the Special Counsel to seek approval or get permission from the [Attorney General] before making final decisions about who to investigate, indict, and prosecute." Br. 22. That was also true of United States commissioners—who could issue warrants for the arrest and detention of defendants—but who nonetheless "are inferior officers." *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 353 (1931). And it is true for United States Attorneys, 28 U.S.C. § 547, who are also inferior officers. *See Myers v. United States*, 272 U.S. 52, 159 (1926); *Hilario*, 218 F.3d at 25-26; *United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999); *United States Attorneys—Suggested Appointment Power of the Attorney General—Constitutional Law (Article II, § 2, cl. 2)*, 2 Op. O.L.C. 58, 59 (1978) ("U.S. Attorneys can

be considered to be inferior officers").[3]   Few inferior-officer positions require a supervisor to review every single decision.  *See, e.g.*, *Edmond*, 520 U.S. at 665; C46 n.22. Thus, the Special Counsel's authority to act without obtaining advance approval of every decision cannot transform the Special Counsel into a principal officer, requiring presidential appointment and Senate confirmation.

### 4.  The Attorney General retains authority to revoke the Special Counsel regulation

While the Special Counsel regulation has the force of law while in effect, it may also be revoked in the Attorney General's sole discretion.  *See Nixon*, 418 U.S. at 696 (noting that "it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority"); *In re Sealed Case*, 829 F.2d 50, 56 (D.C. Cir. 1987) ("[T]he Independent Counsel: Iran/Contra serves only for so

---

[3] Miller suggests that U.S. Attorneys are principal officers because, "from the very beginning," they have been appointed by the President and confirmed by the Senate. Br. 15-17 (quoting *In re Sealed Case*, 838 F.2d 476, 511 n.55 (D.C. Cir. 1988), *rev'd sub nom Morrison*, 487 U.S. 654).   Historically, that practice likely arose because U.S. Attorneys were not made subject to the Attorney General's supervision and oversight until 1861.  *Compare* First Judiciary Act, 1 Stat. 73, 92-93 (1789), *with* Act of Aug. 2, 1861, ch. 37, § 1, 12 Stat. 285, 285.   More recently, Congress has enacted legislation allowing for the appointment of U.S. Attorneys by the President, with the advice and consent of the Senate, 28 U.S.C. § 541(a); by a court, *id.* § 546(d); or by the Attorney General, *id.* § 546(a)—the latter two appointment authorities manifesting Congress's understanding that U.S. Attorneys are inferior officers.   And every court that has considered the question has concluded that U.S. Attorneys are inferior officers.  Thus, to the extent that the Special Counsel "can be accurately characterized as a U.S. Attorney-at-Large," Br. 17; *see* 28 C.F.R. § 600.6 (Special Counsel has the "investigative and prosecutorial functions of any United States Attorney"), the Special Counsel, like any U.S. Attorney, would fall on the "inferior officer" side of the line.

long as the March 5, 1987, regulation remains in force.  Subject to generally applicable procedural requirements, the Attorney General may rescind this regulation at any time, thereby abolishing the Office of Independent Counsel: Iran/Contra.").  The regulation was issued as a rule "relat[ing] to matters of agency management or personnel" and "therefore exempt from the usual requirements of prior notice and comment and a 30-day delay in the effective date," *Office of Special Counsel*, 64 Fed. Reg. at 37,041; the regulation could likewise be amended or eliminated without notice-and-comment rulemaking, *see* 5 U.S.C. § 553(a)(2).  Thus, "to the extent that the regulation threatens to impair the Acting Attorney General's ability to direct and supervise the Special Counsel, the Department of Justice may simply rescind or revise the regulations at any time."  *Concord*, 317 F. Supp. 3d at 615; *see* C30-C31 ("shackles the Attorney General may remove anytime, for any reason, do not meaningfully restrict").[4]

Miller urges that potential revocation of the regulation is a "hypothetical future circumstance" that should not be considered.  Br. 24-25.  In *Sealed Case*, however, the court expressly considered the Attorney General's power to revoke the relevant

---

[4] *Nader v. Bork*, 366 F. Supp. 104, 107-109  (D.D.C. 1973), found the revocation of the regulation establishing the Watergate Special Prosecutor arbitrary and unreasonable, where the Acting Attorney General first fired the Special Prosecutor in violation of regulation, then retroactively rescinded it, and then reinstated a similar regulation less than three weeks later.  That chain of events is distinguishable from a decision to revoke the Special Counsel regulation without more.  *See Corcord*, 317 F. Supp. 3d at 616 n.7. In any event, *Sealed Case* declined to "decide whether [*Nader*'s] analysis was correct." 829 F.2d at 56 n.33.

regulation in evaluating his control over a Special Counsel. 829 F.2d at 56 (noting that the court "need not decide" whether the Ethics in Government Act created a principal officer "in order to conclude that the regulation does not" because of the "crucial difference" that "the Attorney General may rescind th[e] regulation at any time, thereby abolishing the Office"). That consideration makes logical sense. The status of the Special Counsel turns on all of the Attorney General's supervisory authority—not only his self-imposed restraints, but also his ability to lift those restraints. *See* C30 ("the Attorney General voluntarily has limited his power—but unlike Ulysses, the Attorney General can unbind himself at will"). Accounting for that revocation power does not require the court to consider "hypothetical future circumstance[s]," but rather accounts for the full extent of the Attorney General's current authority.

Miller contends that the Special Counsel regulation cannot "be changed immediately (or even very quickly) by the Attorney General" because "once a given legal or policy position has been enshrined, the Executive Branch entity involved cannot revoke it without going through the appropriate process, which includes providing 'a reasoned explanation for the change.'" Br. 26 (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016)). But the Administrative Procedure Act does not require notice-and-comment rulemaking for "matter[s] relating to agency management or personnel." 5 U.S.C. § 553(a)(2). The Special Counsel regulation falls within that exception. *See Office of Special Counsel*, 64 Fed. Reg. at 37,041. And the Attorney General

24

could readily provide a reasoned explanation by concluding that greater supervision of sensitive investigations was appropriate.

Nor would judicial review be available.  A decision to rescind the regulation in order to exercise greater control over the investigation would be "'committed to agency discretion by law.'"  *Sealed Case*, 829 F.2d at 63 (Williams, J., concurring in part and dissenting in part) (quoting 5 U.S.C. § 701(a)(2)).  A decision is committed to agency discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation marks omitted).  If no "'judicially manageable standards' are discernable, meaningful judicial review is impossible, and agency action is shielded from the scrutiny of the courts."  *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

Miller identifies no statute that would restrict the Attorney General's ability to rescind the Special Counsel regulation.  To the contrary, the statutes governing the Attorney General's ability to appoint and manage the Special Counsel "speak in the broadest imaginable terms."  *Sealed Case*, 829 F.2d at 64 (Williams, J.) (discussing 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, 515(a)).  Thus, no "judicially manageable standards" exist by which to judge an Attorney General's revocation of the Special Counsel regulation.  Indeed, as Judge Williams explained in *Sealed Case*, "all of" the "factors militating in favor of discretion and against review" of prosecutorial decisions

25

are applicable to the Attorney General's revocation of regulations governing a Special Counsel. *Id.* at 64; *accord Concord*, 317 F. Supp. 3d at 616.

Miller's reliance (Br. 26-28) on *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018), is misplaced. There, the rescission of an immigration program was found reviewable because the rescission was based on the agency's "determination that the program was implemented without proper statutory and constitutional authority—a legal determination," which, the court concluded, "when made in the context of a general enforcement policy, is not subject to [the] presumption of unreviewability." 298 F. Supp. 3d at 234; *see generally OSG Bulk Ships v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998). Whatever the merit of the analysis in *Trump v. NAACP*, it does not apply here. Unlike a "legal interpretation phrased as a general enforcement policy," 298 F. Supp. 3d at 233, a discretionary decision to rescind the Special Counsel regulation would turn on the Attorney General's prosecutorial judgment on how to supervise certain types of investigations. Decisions of that nature are committed to the Attorney General's discretion. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Sealed Case*, 829 F.2d at 64 (Williams, J.) (explaining that the "search for any 'law to apply'" to the Attorney General's authority to supervise the Special Counsel "is singularly unproductive").

## C. Precedent forecloses Miller's principal-officer argument

The conclusion that a Special Counsel is not a principal officer is also compelled by precedent. The Supreme Court in *Nixon* characterized the Watergate Special

Prosecutor as a "subordinate officer[], appointed "to assist [the Attorney General] in the discharge of his duties." 418 U.S. at 694; *see also Morrison*, 487 U.S. at 673 (equating "subordinate officer" in *Nixon* with "inferior Officer"); *id.* at 721 (Scalia, J., dissenting) (same). And when Appointments Clause challenges to independent counsels arose in *Morrison* and *Sealed Case*, the Supreme Court and this Court held that the independent counsels in question were inferior officers based on reasoning that equally applies here.

The statutory independent counsel at issue in *Morrison* was subject to *less* oversight and supervision than is the Special Counsel here: the independent counsel was not required to explain her investigative or prosecutorial steps to the Attorney General, and the Attorney General had no authority to countermand the independent counsel's actions. *Compare Morrison*, 487 U.S. at 662-665, *with* 28 C.F.R. § 600.7(b). As for the factors identified in *Morrison*, both an independent counsel and a Special Counsel may be removed by the Attorney General for good cause, *Morrison*, 487 U.S. at 671; 28 C.F.R. § 600.7(d); both have "certain, limited duties," *Morrison*, 487 U.S. at 671; *e.g.*, Appointment Order ¶¶ (b) & (c); both may "only act within the scope of th[eir] jurisdiction," *Morrison*, 487 U.S. at 672; 28 C.F.R. § 600.4(a), (b); and both are "appointed essentially to accomplish a single task, and when that task is over the office is terminated, either by the counsel [him]self or by action of the [Acting Attorney General,]" *Morrison*, 487 U.S. at 672; 28 C.F.R. § 600.8(c). Thus, the *Morrison* factors "establish that [the Special Counsel] is an 'inferior' officer in the constitutional sense." 487 U.S. at 672; *accord* C48-C49; *Concord*, 317 F. Supp. 3d at 618; *Manafort*, 2018 WL

27

3126380, at *3 n.5 (citing *Morrison* for the proposition that "[t]he Special Counsel appears quite plainly to be an inferior officer"); *see United States v. Libby*, 429 F. Supp. 2d 27, 44 (D.D.C. 2006) (explaining that special counsel Patrick Fitzgerald "falls squarely into the mold of *Morrison*, where the Supreme Court concluded that the independent counsel was an inferior officer").

Miller claims that *Morrison* "has been widely regarded as being supplanted by subsequent Appointments Clause cases." Br. 17. But the Supreme Court has never overruled *Morrison*. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). And this Court sitting en banc has recently noted, albeit in another context, that *Morrison* "remains valid and binding precedent." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 96 (D.C. Cir. 2018) (en banc).

Miller also attempts to distinguish *Morrison*, claiming that the independent counsel's duties, jurisdiction, and tenure were more limited than the Special Counsel's. Br. 18-19. Miller notes that Morrison's specific inquiry was "focused on only one person, who was out of government at the time: Ted Olson." Br. 18 (internal quotation marks omitted). But in determining that the independent counsel was an inferior officer, the Supreme Court focused solely on the statutory structure of the office, not on Morrison's particular investigation. *See Morrison*, 487 U.S. at 671-672; *see also* C49-C51. Without explanation, Miller asserts that "[t]he prosecutorial power wielded by this Special Counsel is clearly extraordinary." Br. 18. But the independent counsel had the authority to investigate the most senior officials in government and to prosecute them

for "violations of 'any Federal criminal law other than a violation classified as a Class B or C misdemeanor or an infraction.'" *Morrison*, 487 U.S. at 660 n.2.  Given the scope of this authority, the district court correctly concluded that "[t]he Special Counsel's authority is not clearly greater than the Independent Counsel's, and arguably is lesser." C50.

This Court's binding opinion in *Sealed Case*—which Miller does not address in his principal/inferior officer analysis—likewise compels the conclusion that the Special Counsel is an inferior officer.  There, the Attorney General relied on now-lapsed authority under the Ethics in Government Act to appoint independent counsel Lawrence Walsh to investigate whether certain arms shipments and diversion of funds involved criminal conduct.  *Sealed Case*, 829 F.2d at 51-52, 55-56.  To avoid a constitutional challenge to the Ethics in Government Act, the Attorney General gave Walsh a parallel appointment under 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515, delegating the authority to investigate the Iran/Contra matter and prosecute crimes arising from it.  *Id.*  In rejecting an Appointments Clause challenge, this Court concluded that Walsh was "'charged with the performance of the duty of the superior [*i.e.*, the Attorney General] for a limited time and under special and temporary conditions," and "[a]s such * * * remains an 'inferior Officer' whom the Attorney General, as the 'Head[] of [a] Department[ ],' may appoint under the express terms of the Appointments Clause." *Id.* at 56-57 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)) (alterations in *Sealed Case*).  Because the Special Counsel here was appointed pursuant to the same

29

statutory authority as Walsh, and was tasked with an investigation that is similarly limited in scope, *Sealed Case* mandates the conclusion that the Special Counsel is an "inferior Officer."

## II.    The Attorney General Has Statutory Authority To Appoint The Special Counsel

Miller, supported by *amicus* Concord, contends that the Attorney General lacks statutory power to appoint the Special Counsel, as the Appointments Clause requires. The Supreme Court in *Nixon*, 418 U.S. 683, and this Court in *Sealed Case*, 829 F.2d 50, however, each held that the Attorney General has statutory authority to appoint a special counsel and delegate prosecutorial authority to him.  That precedent forecloses Miller's challenge to the statutory authority for the appointment here.  The challenge also fails on the merits:  28 U.S.C. §§ 515(b) and 533 provide the relevant appointment authority, as text, history, and practice confirm.

### A.    Precedent establishes the Attorney General's appointment authority

In *Nixon*, the Attorney General appointed a special prosecutor to investigate and prosecute offenses arising from the 1972 presidential election, empowering the prosecutor through an expansive regulation.  418 U.S. at 694 & n.8.  Acting under that regulation, the special prosecutor issued a subpoena to the President for the production of evidence and the district court denied a motion to quash.  *Id.* at 687-688.  In the Supreme Court, the President contended that the case was not justiciable because it constituted only an "intra-branch dispute" over evidence to be used in a prosecution,

in which the President's decision was "final." *Id.* at 692-693. The Court rejected that contention, explaining that the special prosecutor acted pursuant to a proper delegation of the Attorney General's authority:

> Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. § 516. It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533. *Acting pursuant to those statutes*, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure.

*Id.* at 694 (emphasis added). The Court held that, as long as the regulation delegating power to the special prosecutor remained in place, it bound the entire Executive Branch and required rejection of the President's argument that he could override the special prosecutor's determination to seek evidence through the subpoena. *Id.* at 695-696.

Miller and Concord assert that *Nixon*'s discussion of the statutory provisions authorizing the delegation of power to the special prosecutor was "merely unnecessary background," and thus dicta. Br. 12-13; *see* Concord Br. 22-23. That is incorrect. *Nixon* focused on the Attorney General's appointment power because the special prosecutor could not assert the Attorney General's authority "to conduct the criminal litigation of the United States Government" unless the prosecutor had been properly appointed. 418 U.S. at 694. If the Attorney General lacked authority to appoint a special prosecutor, the regulation empowering that prosecutor to represent the sovereign interests of the United States in litigation would have lacked force. Finding statutory authority for the appointment was thus critical to the Court's conclusion that "[s]o long

31

as this regulation [conferring authority on the special prosecutor] is extant it has the force of law." *Id.* at 695.[5]

Concord also argues that *Nixon* is not binding because it merely "assumed" that the relevant appointment authority existed. Concord Br. 21-22 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990)). But *Nixon* did not rest on an unstated assumption: it "expressly address[ed]" the statutory authority for the special prosecutor's appointment. *Verdugo-Urquidez*, 494 U.S. at 272. Although the President did not contest that statutory analysis, the Court's recognition of the Attorney General's appointment authority reflected its independent judgment and formed a crucial element of its holding.[6]

---

[5] Concord suggests (Br. 22) that the Court's justiciability holding was predicated only on its conclusion that there was "concrete adverseness" over the executive-privilege question. *Nixon*, 418 U.S. at 697. But that conclusion reflected a second level of analysis; it came after the Court's rejection of the President's claim that he had final control over the privilege question within the Executive Branch—a claim that the Court rejected by holding that the regulation delegating authority to the special prosecutor was binding while in force. *Id.* at 693-696. And even if the statutory analysis were regarded as dictum—which it is not—"carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *United States v. Fields*, 699 F.3d 518, 522 (D.C. Cir. 2012) (citation omitted).

[6] Concord contends (Concord Br. 20-21) that *Sealed Case* treated *Nixon* as inconclusive on this issue because it stated in a footnote that *Nixon* "presupposed the validity of a regulation appointing the Special Prosecutor." *Sealed Case*, 829 F.2d at 55 n.30 (citing *Nixon*, 418 U.S. at 694-696). But *Sealed Case* made that observation while invoking *Nixon* to support its conclusion (*id.* at 55) that the Attorney General has statutory authority to appoint a special counsel. In any event, *Sealed Case* cannot alter the Supreme Court's actual holding in *Nixon*.

In *Sealed Case*, this Court reached the same conclusion about the Attorney General's statutory authority. *See* 829 F.2d at 55. As previously discussed (*see* pp. 29-30, *supra*), the Attorney General appointed independent counsel Lawrence Walsh to investigate Iran/Contra under 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515. *See* 829 F.2d at 52-53. Oliver North challenged a subpoena issued by the independent counsel's grand jury, arguing that the Attorney General's delegation was not "lawful." *Id.* at 55. This Court disagreed, finding clear authority to create an independent counsel:

> We have no difficulty concluding that the Attorney General possessed the statutory authority to create the Office of Independent Counsel: Iran/Contra and to convey to it the "investigative and prosecutorial functions and powers" described in 28 C.F.R. § 600.1(a) of the regulation. The statutory provisions relied upon by the Attorney General in promulgating the regulation are 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515.

*Id.* While noting that the provisions do not "explicitly authorize the Attorney General to create an Office of Independent Counsel virtually free of ongoing supervision," the Court "read them as accommodating the delegation at issue here." *Id.*[7] In finding the power to "create" the independent counsel's office, *Sealed Case* necessarily found authority to "appoint" an independent counsel. *See id.* at 56 ("The Attorney General's power of appointment extends only to the Department of Justice; hence the Office of

---

[7] The *Concord* district court interpreted *Sealed Case* to say that that the statutes "do not explicitly authorize" the *appointment of a special counsel*. *See* 317 F. Supp. 3d at 622. But *Sealed Case* did not say that; it said only that the statutes "do not explicitly authorize" the creation of an office "*virtually free of ongoing supervision*." 829 F.2d at 55 (emphasis added).

Independent Counsel: Iran/Contra is 'within' the Department, though free of ongoing supervision by the Attorney General.").

Miller and Concord argue that Walsh's earlier appointment under the Ethics in Government Act made him a Department of Justice official, and thus that *Sealed Case* does not contemplate appointing a private attorney.  *See* Br. 13-14; Concord Br. 20-21, 23-24.  But that argument presumes that Walsh's appointment under the Ethics in Government Act was valid.  *Sealed Case* expressly declined to resolve that issue.  *See, e.g.*, 829 F.2d at 51, 54, 59, 61-62.  Indeed, the entire purpose of giving Walsh a new and parallel appointment was to avoid a constitutional attack on the Act.  *See id.* at 52.  *Sealed Case* validated that decision by treating the Attorney General's appointment as a freestanding and independent basis for Walsh to act.

The Supreme Court's decision in *Edmond* casts no doubt on *Sealed Case*'s statutory holding.  *Cf.* Concord Br. 24-25.  *Edmond* held that a statute granting the power to "assign" military officers does not grant the power to "appoint" them.  520 U.S. at 657-58.  Section 515(b)'s delegation, by contrast, speaks of "retain[ing]" and "commission[ing]" special attorneys—words akin to "appointing" (not "assigning").  *See* Part II.B.1, *infra*; *see also Burnap v. United States*, 252 U.S. 512, 515, 518 (1920) (statute authorizing department head to "employ" specified positions "confer[s] the power of appointment").  And Section 533 explicitly empowers the Attorney General to "appoint" officials.

*Nixon* and *Sealed Case* control the outcome here.  Those cases hold that 28 U.S.C. §§ 509, 510, 515, and 533 give the Attorney General the authority to appoint and delegate criminal law enforcement functions in particular matters to a special counsel. Here, the Acting Attorney General exercised that statutory authority to appoint the Special Counsel, whose mandate is, for these purposes, indistinguishable from those approved in *Nixon* and *Sealed Case*.

**B.      Multiple statutes establish the Attorney General's authority**

       **1.  The text of two statutes grants the Attorney General power to appoint special counsels**

a.    Section 515 gives the Attorney General authority to appoint "special attorneys" like the Special Counsel.  Section 515(b) empowers the Attorney General to "commission[]" attorneys who are "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General" or "special attorney[s]."  28 U.S.C. § 515(b).  "[S]pecially retained *under authority of the Department of Justice*" necessarily means specially retained by the Attorney General, who is head of the Department of Justice and vested with all of its functions and powers.  *See* 28 U.S.C. §§ 503, 509.  Further, the commission is the "warrant or authority * * * issuing from the government * * * empowering a person or persons named to do certain acts, or to exercise jurisdiction, or to perform the duties and exercise the authority of an office." H. Campbell Black, *A Dictionary of Law* 226 (1st ed. 1891); *see also Black's Law Dictionary* 327 (10th ed. 2014) (similar); *Department of Transp. v. Association of Am. R.R.*, 135 S. Ct.

1225, 1235 (2015) (Alito, J., concurring) ("to be an officer, the person should have sworn an oath and possess a commission").  As *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 157 (1803), recognized, "the constitutional power of appointment has been exercised * * * when the last act, required from the person possessing the power, has been performed.  This last act is the signature of the commission."  Section 515(b) thus allows the Attorney General to appoint special attorneys by retaining them and commissioning them to vest them with authority.

Section 515(a) further recognizes that the Attorney General can "specially appoint[]" attorneys "under law" and empower them to exercise, "when specifically directed by the Attorney General," all criminal (and civil) powers possessed by United States Attorneys.  Congress thus specified not only that the Attorney General could appoint special attorneys under law, but also that he could give special attorneys extensive powers.

Concord responds that "specially retained" is a past participle and thus "refers to an attorney already retained."  Concord Br. 3, 5-6.  But while "specially retained" is indeed a past-participle phrase modifying "attorney," "[p]ast participles * * * are routinely used as adjectives to describe the present state of a thing."  *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722 (2017); *see also id.* ("the term 'past participle' is a 'misnomer, since' it 'can occur in what is technically a present tense'" (quoting P. Peters, *The Cambridge Guide to English Usage* 409 (2004)) (alternations omitted)).  As the district court below explained, "the term 'attorney specially retained' can mean either

36

'attorney who *is now* specially retained' or 'attorney who *previously had been* specially retained.'" C71 (emphasis in original).

Only the "is now" retained construction fits the history of Section 515. *See* Part II.B.2, *infra*. And only the "is now" retained construction matches the main verbs in the statute, which are in the present tense: the specially appointed attorney "may * * * conduct" legal proceedings, and the attorney "shall be commissioned" with a title and "shall take the oath." ("[S]hall be commissioned" is the passive-voice construction of "shall commission" and is thus in the present tense. *Cf.* Concord Br. 5.) And those present-tense actions should occur together with the appointment, since it makes little sense to "appoint" a special attorney who has no commission or title, who has not taken the oath of office, and who has no power to act.

Interpreting Section 515(b) to grant appointment authority does not risk turning the phrases "under authority of the Department of Justice" in Section 515(b) or "under law" in Section 515(a) into surplusage. *Cf.* Concord Br. 3, 6; *Concord*, 317 F. Supp. 3d at 621. Section 515(b)'s predecessor was enacted in 1870 as part of a scheme to bring the federal government's legal work into the Department of Justice. *See* Part II.B.2, *infra*. Requiring that an attorney be specially retained "under authority of the Department of Justice" clarified that other agencies could not retain special attorneys. Section 515(a)'s predecessor was enacted decades later in a freestanding statute. *See id.* "Under law" in Section 515(a) refers back to Section 515(b) (along with other laws, like Section 533, granting appointment authority).

37

Finally, Section 515(a)'s reference to "any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law" does not imply that a "specially appointed" attorney cannot be an "officer of the Department of Justice." Nor do similar phrasings in the statutory and legislative history. *Cf.* Concord Br. 7 & n.2. It is common for provisions of a statute to "overlap substantially but not completely." *Shaw v. United States*, 137 S. Ct. 462, 468-469 (2016). Here, although the two categories may partially overlap, not every special attorney is necessarily an officer, and certainly not every officer of the Department of Justice is a special attorney. Since each phrase captures a situation that the other phrase does not, Congress needed to list the two groups separately.

b.  Authority for the Attorney General's appointment power also comes from Section 533. Section 533 specifically confirms that "[t]he Attorney General may appoint officials—(1) to detect and prosecute crimes against the United States." 28 U.S.C. § 533. This description aligns perfectly with a Special Counsel, who combines the typical roles of law enforcement and prosecutors by both investigating and prosecuting crimes. *See* 28 C.F.R. § 600.1. In *Edmond*, the Supreme Court located the power to appoint Coast Guard judges—who were "inferior Officers"—in a "default statute" that allowed the Secretary of Transportation to "appoint and fix the pay of officers and employees of the Department of Transportation." 520 U.S. at 656-658, 666 (quoting 49 U.S.C. § 323(a)). Section 533 is far more specific.

38

Concord offers two counterarguments.  It first objects that Section 533 refers to appointing "officials"—not "officers"—which "can refer to a 'mere employee, functionary, or agent.'"  Concord Br. 10 (quoting *Concord*, 317 F. Supp. 3d at 619).  But "official" is a term that naturally encompasses officers.  The Supreme Court's *Lucia* opinion illustrates that point by stating that "[t]he Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government *officials* distinct from mere employees."  138 S. Ct. at 2049 (emphasis added).  Many other cases employ the same usage of "official."  *See, e.g.*, *Ortiz v. United States*, 138 S. Ct. 2165, 2183 (2018); *Morrison*, 487 U.S. at 672; *Buckley*, 424 U.S. at 131; *Eaton*, 169 U.S. at 343-344.  And interpreting "officials" in Section 533 to include officers does not contradict Congress's use of the term "officer" in other statutes.  *Cf.* Concord Br. 10-11 (citing *Concord*, 317 F. Supp. 3d at 619).  Rather, as *Lucia* suggests, "official" is a generic term that covers both officers and employees.  *See* C69; *see also, e.g.*, 18 U.S.C. § 201(a)(1) ("public official" includes "an officer or employee or person acting for or on behalf of the United States").

Second, Concord and Miller point to Section 533's placement in a chapter titled "Federal Bureau of Investigation."  Concord Br. 11-13; Miller Br. 9-10.  But "the title of a statute cannot limit the plain meaning of the text" and matters "[f]or interpretive purposes" "only when it sheds light on some ambiguous word or phrase."  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (brackets, ellipsis, and alterations omitted).  And there is no textual hint that Section 533(1) is limited to FBI officials.  To

the contrary, Section 533(1) allows the appointment of officials "to detect *and prosecute* crimes"; and "only attorneys prosecute crime." C69; *see also, e.g.*, 28 U.S.C. § 547(1) (U.S. Attorney shall "prosecute for all offenses against the United States" in her district).

Concord argues that subsections (2) through (4) of Section 533 suggest that Section 533(1) covers only FBI officials. Concord Br. 11-12. Those subsections allow the appointment of officials to (2) protect the President, (3) protect the Attorney General, and (4) conduct other investigations on official matters. But like subsection (1), the other subsections give no indication that they are limited to the FBI. Indeed, district courts have read Section 533 to allow appointment of Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") officials—a result that Concord embraces as "fully consistent" with its own interpretation. Concord Br. 11 n.3; *see United States v. Hasan*, 846 F. Supp. 2d 541, 546 n.7 (E.D. Va. 2012), *aff'd*, 718 F.3d 338 (4th Cir. 2013); *United States v. Fortuna*, 2013 WL 1737215, at *2 n.8 (D.N.J. Apr. 22, 2013). But if Section 533 allows the appointment of ATF officials, it clearly is not limited to FBI officials, and Concord's efforts to cabin the unambiguous text of Section 533(1) fail.[8]

---

[8] Miller and Concord have abandoned their argument—rejected by the district court below—that the Appointments Clause demands a clear statement to delegate appointment authority to department heads. *See* C77-80. Miller alludes to a need for "express and specific statutory language authorizing [the] appointment" only in a footnote, Br. 8 n.3—an insufficient way to preserve an argument. *See CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014). In any event, a clear-statement rule makes no difference here, as both Sections 533 and 515(b) would easily satisfy it.

## 2. Section 515's history confirms that it provides appointment power

The history of Section 515 removes any question that it authorizes the Attorney General to appoint special attorneys such as the Special Counsel. The district court below described the statutory history in detail, *see* C4-C11, C72-C76, and the government's brief described the extensive reliance by past Attorneys General on special counsels, *see* Doc. 32-2, at 20-23. For present purposes, that history establishes four significant propositions.

First, although Title 28 of the U.S. Code now groups Section 515(a) and (b) together, Congress originally enacted their predecessors decades apart, in separate laws. The precursor to Section 515(b) came first, enacted in 1870 in the statute that created the Department of Justice. *See* An Act to establish the Department of Justice, ch. 150, § 17, 16 Stat. 162, 164-165 (1870). The 1870 Act centralized the federal government's legal work in the Department of Justice and—in response to abuses in the hiring of outside counsel as special attorneys—limited the circumstances in which the Attorney General could pay them. *Id.* §§ 3, 17, 16 Stat. at 162, 164-165; *see In re Persico*, 522 F.2d 41, 57-58 (2d Cir. 1975). As the Supreme Court later explained, however, the 1870 Act limited the Attorney General's discretion to retain special attorneys by restricting their compensation, while leaving it to the Attorney General "to determine whether the public interests required the employment of special counsel." *United States v. Crosthwaite,*

168 U.S. 375, 379-380 (1897); *see also United States v. Winston*, 170 U.S. 522, 524-525 (1898) (the Attorney General may, "if he deems it essential, employ special counsel").

Second, the statute now codified as Section 515(a) was enacted in 1906, in order to validate a special counsel's authority to conduct grand jury proceedings, after the district court in *United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903), ruled that a special assistant to the Attorney General could not do so. Congress responded with a law whose "express purpose * * * was to overrule the broad holding in *Rosenthal*," explicitly giving "specially-retained outside counsel" all of the powers of a U.S. Attorney. *In re Persico*, 522 F.2d at 59. The House Report accompanying the 1906 Act explained that "[t]here can be no doubt of the advisability of permitting the Attorney-General to employ special counsel in special cases." H.R. Rep. No. 2901, 59th Cong., 1st. Sess. 2 (1906). The purpose of the new law was to overrule *Rosenthal* and restore a special counsel's power to appear before the grand jury: "It seems eminently proper that such powers and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future." *Id.* The law would have had no effect if the Attorney General could not already retain special counsel—which would contradict the presumption that Congress intends an amendment "to have real and substantial effect." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation marks omitted); *see* C75.

Third, subsequent enactments confirm the Attorney General's appointment authority. In 1930, Congress amended the precursor to Section 515(b) (then codified

at 5 U.S.C. § 315) to allow the Attorney General to designate "special attorneys" in addition to "special assistants to the Attorney General." *See* Act of Apr. 17, 1930, ch. 174, Pub. L. No. 71-133, 46 Stat. 170. Congress returned to the statute again in 1948, simplifying its wording. *See* Act of June 25, 1948, Pub. L. No. 80-773, § 3, 62 Stat. 869, 985-986. Despite the widespread use of special counsels before these enactments, *see* pp. 43-44, *infra*, Congress never questioned the Attorney General's power of appointment. To the contrary, the House Report accompanying the 1930 amendment acknowledged that power. H.R. Rep. No. 229, 71st Cong., 2d. Sess. 1 (1930).

Fourth, drawing on the authority to retain counsel originally conferred in 1870, past Attorneys General have "made extensive use of special attorneys." *Persico*, 522 F.2d at 54. These instances—involving appointments by Attorneys General under Presidents Garfield, Theodore Roosevelt, Truman, Kennedy, Nixon, Carter, George H.W. Bush, and Clinton—span nearly 140 years and include some of the most notorious scandals in the Nation's history, including Watergate. *See* Doc. 32-2, at 20-23. Congress has also long demonstrated its understanding that the Attorney General has authority to appoint special counsels by repeatedly appropriating funds for the Attorney General to compensate them. *See, e.g.*, Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409-410; Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986; Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-1182; Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-904; Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367, 1412; Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317. And published opinions of the Attorney

General, for more than a century, have recognized that authority.  *See Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 n.3 (1986); *Application of Conflict of Interest Rules to the Conduct of Government Litigation by Private Attorneys*, 4B Op. O.L.C. 434, 442-443 & n.5 (1980) (Appendix); *Naval Court-Martial*, 18 Op. Att'y Gen. 135, 136 (1885).

Miller and Concord offer no real response to this statutory history and consistent endorsement of appointment power by all three branches of government.  They point only to three later enactments that explicitly provide for appointment of special counsels, suggesting that these statutes would be superfluous if Section 515 allowed appointment of special counsels.  *See* Concord Br. 7-9.  The district court explained why that superfluity argument fails.  C80-C83.  Two of those statutes vested the power to appoint a special counsel in actors other than the Attorney General.  A 1924 joint resolution authorized the President to appoint a special counsel, with advice and consent of the Senate.  S.J. Res. No. 54, Feb. 8, 1924, 43 Stat. 5, 6.  And the now-lapsed Ethics in Government Act directed the Attorney General to ask a division of the D.C. Circuit to appoint an independent "special prosecutor" (later renamed an "independent counsel").  *See* Pub. L. No. 95-521, §§ 601-602, 92 Stat. 1824 (codified at 28 U.S.C. §§ 49, 591-597).

Concord's other cited statute, the Payne-Aldrich Tariff Act of 1909, allowed the Attorney General to "employ and retain  * * *  special attorneys and counselors at law in the conduct of customs cases." Ch. 6, § 28, 36 Stat. 11, 108.  The appointment

44

authority under the Payne-Aldrich Tariff Act is similar to Section 515, but that lone example casts no doubt on the Attorney General's authority under other provisions. The Act created a new U.S. Court of Customs Appeals and approved a new Assistant Attorney General and five additional attorneys to represent the government in the classification and litigation work that was sure to accompany new tariffs. 36 Stat. at 108. Given those innovations, it is not surprising that Congress explicitly provided the Attorney General with authority to staff the new division. But that singular instance of overlapping appointment authority does not imply that Section 515 provided none. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both.") (citation omitted).

## III. The Acting Attorney General Had Authority To Appoint The Special Counsel

Finally, Miller argues that the Deputy Attorney General lacked authority to appoint the Special Counsel, even though the Attorney General had recused himself from the Russia investigation. *See* Br. 32-44. Miller's argument would mean that, in cases of recusal, no law places the Deputy Attorney General atop the Department of Justice, acting as the head of the Department. That is incorrect.

A. Initially, an acting "Head[] of Department" may make appointments under the Appointments Clause. That proposition follows the principle that "[a]n acting officer is vested with the full authority of the officer for whom he acts." *Acting Officers*,

45

6 Op. O.L.C. 119, 120 (1982) (citing *Keyser v. Hitz*, 133 U.S. 138, 145-146 (1890); *Ryan v. United States*, 136 U.S. 68, 81 (1890)).   Miller does not seem to disagree.    And 28 U.S.C. § 508(a) provides that "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office."   Here, the Deputy Attorney General became Acting Attorney General for campaign-related matters when the Attorney General, as required, recused himself.[9] A recusal constitutes a "disability" for purposes of Section 508(a).   And an "acting officer" is "[o]ne *performing the duties* of an office—usu. temporarily—but who has no claim of title to the office."    *Black's Law Dictionary* 1257 (10th ed. 2014) (emphasis added); *see also* C84-C86.   Thus, if the Attorney General has a "disability" under Section 508, the Deputy Attorney General can make appointments as the "acting" Attorney General for the relevant matter.

---

[9] Recusal is mandatory under Section 528, which compels the Attorney General to promulgate rules "which require the disqualification of *any* officer or employee of the Department of Justice" when participation in a prosecution or investigation "may result in a personal, financial, or political conflict of interest, or the appearance thereof."  28 U.S.C. § 528 (emphasis added); *see* 28 C.F.R. § 45.2(a) (barring participation based on certain "personal or political relationship[s]").  As noted (*see* p. 4, *supra*), the Attorney General recused himself from any "investigations of any matters related in any way to the campaigns for President of the United States."  He later informed the Senate Select Committee on Intelligence that he recused himself "because a Department of Justice regulation, 28 CFR 45.2, required it."  Attorney General Jeff Sessions Prepared Remarks to the United States Senate Select Committee on Intelligence (June 13, 2017), *available at* https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-prepared-remarks-united-states-senate-select-committee.

B.   Miller disagrees (Br. 33) that Section 508(a) makes the Deputy Attorney General an "acting" officer, arguing that "acting" status can come only from the Federal Vacancies Reform Act.  *See* 5 U.S.C. § 3345.  While that Act provides the default mode of creating acting officers, other statutes may also create acting officers by "designat[ing] an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347(a)(1)(B).  Section 508 is such a statute, giving separate authority for "an 'acting' officer authorized to perform all of the duties and exercise all of the powers of that office."  *Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013), *aff'd on other grounds*, 134 S. Ct. 2550 (2014); *see* C86-C87; S. Rep. No. 250, 105th Cong., 2d Sess. 16 (1998) (listing Section 508(a)); *see also United States v. Hasarafally*, 529 F.3d 125, 127 (2d Cir. 2008); *United States v. Guzek*, 527 F.2d 552, 559-560 (8th Cir. 1975); *United States v. McCoy*, 515 F.2d 962, 963 (5th Cir. 1975); *United States v. Pellicci*, 504 F.2d 1106, 1107 (1st Cir. 1974).

C.   Miller wrongly claims that "disability" cannot encompass recusal, suggesting that the term is limited to being "physically incapacitated or hospitalized in intensive care."  Br. 33-34, 36-41.  Properly construed, however, disability includes a legal incapacity that prevents the Attorney General from performing his functions.  Modern dictionaries define "disability" as "[t]he inability to perform some function."  *Black's Law Dictionary* 559 (10th ed. 2014) (def. 1).  This includes "a disqualification, restriction, or disadvantage" and "lack of legal qualification to do something," *Merriam-Webster's Dictionary Online* (defs. 3 & 4), *available at* https://www.merriam-

47

webster.com/dictionary/disability, and "[i]ncapacity in the eye of the law, or created by the law * * * legal disqualification," *Oxford English Dictionary Online* (def. 3), *available at* http://www.oed.com/view/Entry/53381.

Dictionaries from the time of the enactment of Section 508's predecessor confirm that meaning.  The phrasing of Section 508 derives from the 1870 Act creating the Department of Justice, which provided that "[i]n case of a vacancy in the office of Attorney-General, or in his absence or disability, [the solicitor-general] shall have power to exercise all duties of that office."   An Act to establish the Department of Justice, ch. 150, § 2, 16 Stat. 162, 162 (1870) (later codified at U.S. Rev. Stat. 1878, § 347). Dictionaries at the time defined the term "disability" in a fashion that encompasses recusal.  *See* H. Campbell Black, *A Dictionary of Law* 370-371 (1891); *see also* C87-C88 & n.49 (collecting other dictionaries from that time).

Miller argues that a "disability" must prevent the Attorney General from acting in all cases, because Section 508(a) says that "the Deputy Attorney General may exercise *all the duties* of that office."  28 U.S.C. § 508(a) (emphasis added); *see* Br. 33-34, 36-38 (citing *Moog Inc. v. United States*, 1991 WL 46518 (W.D.N.Y. Apr. 1, 1991)).  But Section 508(a) provides only that the Deputy Attorney General "may" exercise those duties. "The permissive term 'may' means that the DAG need not assume all of the Attorney General's duties where only a limited conflict of interest exists."  C89.

D.     Ample authority supports this interpretation of Section 508.   The longstanding view of the Office of Legal Counsel is that if the Attorney General is

recused, he is disabled from participating in matters covered by his recusal. See *Congressional Subpoenas of Department of Justice Investigative Files,* 8 Op. O.L.C. 252, 255 n.3 (1984) ("As a matter of practice and statutory construction, the Department has treated the Attorney General's recusal from a matter as the equivalent of a disability. Under the departmental succession statute, the Deputy Attorney General becomes Acting Attorney General with respect to the matter. See 28 U.S.C. § 508."). And the only other court to consider this precise question appeared to agree. *See Libby*, 429 F. Supp. 2d at 31.

This interpretation of Section 508 is also consistent with judicial interpretations of Federal Rule of Criminal Procedure 25(a) ("Judge's Disability"), which states that if a judge cannot proceed with trial "because of death, sickness, or other disability," another judge in the same court may complete the trial. Fed. R. Crim. P. 25(a)(1). At least four other circuits have interpreted the word "disability" in that rule to include recusal. *See In re United States*, 614 F.3d 661, 662 (7th Cir. 2010); *United States v. Hall*, 171 F.3d 1133, 1153 (8th Cir. 1999); *United States v. Sartori*, 730 F.2d 973, 976 (4th Cir. 1984); *Bennett v. United States*, 285 F.2d 567, 572 (5th Cir. 1960).[10]

---

[10] In *United States v. Jaramillo*, 745 F.2d 1245, 1249 (9th Cir. 1984), the Ninth Circuit did not question that the word "disability" could encompass recusal, but concluded that a judge whose recusal was prompted by his own indictment did not abuse his discretion by failing to invoke Rule 25(a) because the questions the indictment raised about his fitness as a judge cast doubt on all of the prior proceedings. That rationale has no application here. *See* C90.

E.  Finally, interpreting "disability" under Section 508 to include recusal makes logical and practical sense.  Section 528 requires the Attorney General to recuse himself when he has a conflict of interest.  Section 508 ensures that at all times an officer is heading the Department of Justice.  If the Attorney General is recused, it is necessary that someone can head the Department for that investigation.  It is inconceivable that Congress intended Section 508 to reach physical disability, but not to reach legal requirements that disabled the Attorney General from participating in certain matters.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,


ROBERT S. MUELLER, III
 Special Counsel

By:  _/s/_____
MICHAEL R. DREEBEN
JEANNIE S. RHEE
ADAM C. JED
 U.S. Department of Justice
 Special Counsel's Office
 950 Pennsylvania Avenue NW
 Washington, D.C. 20530
 Telephone: (202) 616-0800


SEPTEMBER 2018

50

## CERTIFICATE OF COMPLIANCE

I hereby certify that that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.  I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,907 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

*/s/ Michael Dreeben*
Michael R. Dreeben

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, I electronically filed and served the foregoing brief through the Court's CM/ECF system.

*/s/ Michael Dreeben*
Michael R. Dreeben

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Constitutional Provision**                                                                **Page**

The Appointments Clause, U.S. Const. Art. II, § 2, cl. 2 ........................................ Add. 1

**Statutes**

28 U.S.C. § 508 ................................................................................................ Add. 1

28 U.S.C. § 509 ................................................................................................ Add. 1

28 U.S.C. § 510 ................................................................................................ Add. 1

28 U.S.C. § 515 ................................................................................................ Add. 2

28 U.S.C. § 533 ................................................................................................ Add. 2

**Regulation**

28 C.F.R. Part 600 (excerpts) ......................................................................... Add. 3

   28 C.F.R. § 600.4 ......................................................................................... Add. 3

   28 C.F.R. § 600.7 ......................................................................................... Add. 3

   28 C.F.R. § 600.8 ......................................................................................... Add. 4

**The Appointments Clause, U.S. Const. Art. II, § 2, cl. 2**

[The President] * * * shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

**28 U.S.C. § 508.  Vacancies**

(a) In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office, and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General.

(b) When by reason of absence, disability, or vacancy in office, neither the Attorney General nor the Deputy Attorney General is available to exercise the duties of the office of Attorney General, the Associate Attorney General shall act as Attorney General. The Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General.

**28 U.S.C. § 509.  Functions of the Attorney General**

All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General except the functions—
    (1) vested by subchapter II of chapter 5 of title 5 in administrative law judges employed by the Department of Justice;
    (2) of the Federal Prison Industries, Inc.; and
    (3) of the Board of Directors and officers of the Federal Prison Industries, Inc.

**28 U.S.C. § 510.  Delegation of authority**

The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

**28 U.S.C. § 515.  Authority for legal proceedings; commission, oath, and salary for special attorneys**

(a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

(b) Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law.  Foreign counsel employed in special cases are not required to take the oath.  The Attorney General shall fix the annual salary of a special assistant or special attorney.

**28 U.S.C. § 533.  Investigative and other officials; appointment**

The Attorney General may appoint officials—
    (1) to detect and prosecute crimes against the United States;
    (2) to assist in the protection of the person of the President; and
    (3) to assist in the protection of the person of the Attorney General.
    (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.
This section does not limit the authority of departments and agencies to investigate crimes against the United States when investigative jurisdiction has been assigned by law to such departments and agencies.

**28 C.F.R. Part 600—General Powers of Special Counsel**

* * *

## § 600.4.  Jurisdiction

(a) *Original jurisdiction.* The jurisdiction of a Special Counsel shall be established by the Attorney General. The Special Counsel will be provided with a specific factual statement of the matter to be investigated. The jurisdiction of a Special Counsel shall also include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted.

(b) *Additional jurisdiction.* If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she shall consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere.

(c) *Civil and administrative jurisdiction.* If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action. A Special Counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General.

* * *

## § 600.7.  Conduct and accountability

(a) A Special Counsel shall comply with the rules, regulations, procedures, practices and policies of the Department of Justice. He or she shall consult with appropriate offices within the Department for guidance with respect to established practices, policies and procedures of the Department, including ethics and security regulations and procedures. Should the Special Counsel conclude that the extraordinary circumstances of any particular decision would render compliance with required

Add. 3

review and approval procedures by the designated Departmental component inappropriate, he or she may consult directly with the Attorney General.

(b) The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department. However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that review, the Attorney General will give great weight to the views of the Special Counsel. If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).

(c) The Special Counsel and staff shall be subject to disciplinary action for misconduct and breach of ethical duties under the same standards and to the same extent as are other employees of the Department of Justice. Inquiries into such matters shall be handled through the appropriate office of the Department upon the approval of the Attorney General.

(d) The Special Counsel may be disciplined or removed from office only by the personal action of the Attorney General. The Attorney General may remove a Special Counsel for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies. The Attorney General shall inform the Special Counsel in writing of the specific reason for his or her removal.

## § 600.8.  Notification and reports by the Special Counsel

(a) *Budget.*

   (1) A Special Counsel shall be provided all appropriate resources by the Department of Justice. Within the first 60 days of his or her appointment, the Special Counsel shall develop a proposed budget for the current fiscal year with the assistance of the Justice Management Division for the Attorney General's review and approval. Based on the proposal, the Attorney General shall establish a budget for the operations of the Special Counsel. The budget shall include a request for assignment of personnel, with a description of the qualifications needed.

   (2) Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation, and

provide a budget request for the following year. The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year.

(b) *Notification of significant events.* The Special Counsel shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports.

(c) *Closing documentation.*  At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel.

\* \* \*