**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 18-3052**

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

_____

IN RE: GRAND JURY INVESTIGAITON
_____

ANDREW MILLER,

*Appellant,*

v.

UNITED STATES OF AMERICA,

*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

**BRIEF OF APPELLANT ANDREW MILLER**
_____

PAUL D. KAMENAR
1629 K STREET, N.W.
SUITE 300
WASHINGTON, DC 20006
(301) 257-9435
paul.kamenar@gmail.com

*Counsel for Appellant Andrew Miller*

Date: September 11, 2018

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Appellant Andrew Miller, through his undersigned counsel, certifies the following:

### A.    Parties

Appellant Andrew Miller was subpoenaed to testify before a grand jury empaneled in the United States District Court for the District of Columbia, No. 1:18-gj-00034-BAH.  He filed a motion to quash the subpoena, which the district court (Beryl A. Howell, C.J.) denied.  Chief Judge Howell later found Mr. Miller in contempt for refusing to appear before the grand jury.

Appellee is the United States of America, which is represented by Special Counsel Robert S. Mueller III (the Special Counsel).

There were no intervenors or amici curiae in the district court, which held its proceedings under seal.  On August 30, 2018, a two-judge panel of this Court denied Concord's motion to intervene but granted Concord permission to participate as an amicus curiae.

### B.    Rulings Under Review

The rulings under review are the contempt order now unsealed entered against Mr. Miller on August 10, 2018, ECF No. 36. That order was preceded by a sealed memorandum opinion and order entered on July 31, 2018, ECF No. 23, denying Mr.

Miller's motion to quash. A redacted version of the memorandum opinion was released on August 8, 2018, ECF No. 32-3.

There is no official citation for the contempt order, the redacted version of which can be found in Appx B of the Appendix. The official citation for the redacted memorandum opinion is *In re Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018). The unpublished version of the redacted memorandum opinion can be found in Appx C of the Appendix.

### C.  Related Cases

The case on review has not previously been before this Court or any other court. There is a "related case" within the meaning of Circuit Rule 28(a)(1)(c). The criminal action brought against Concord by the Special Counsel, No. 1:18-cr-00032-DLF (D.D.C.), involves one of the same parties (the United States of America) and legal issues similar to those presented here. On August 15, 2018, the district court (Dabney L. Friedrich, J.) issued a memorandum opinion denying Concord's motion to dismiss the criminal action. The official citation for Judge Friedrich's memorandum opinion is *United States v. Concord Management & Consulting LLC*, 317 F. Supp. 3d 598 (D.D.C. 2018).

Date: September 11, 2018     */s/Paul D. Kamenar*
              Paul D. Kamenar

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................v

STATEMENT OF JURISDICTION........................................................ 1

STATEMENT OF THE ISSUES............................................................ 1

STATUTES AND REGULATIONS ........................................................ 2

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF ARGUMENT ...............................................................5

APPLICABLE STANDARD OF REVIEW............................................. 6

ARGUMENT ........................................................................................ 7

I.   Congress Did Not "By Law" Vest in the Attorney General the Power to Appoint Private Citizens to Be Special Counsel Inferior Officers ...........................7

    A.  No statute provides authority to appoint the Special Counsel. ....................9

    B.  No precedent holds that Congress has authorized by statute the appointment of the Special Counsel ...................................................................12

II.  The Special Counsel's Appointment Is Unconstitutional Because He Is A Principal Officer Not Appointed By The President With The Advice And Consent Of The Senate  ....................................................................14

    A.  The Special Counsel Possesses Extraordinary Power .................................14

    B.  The Special Counsel Satisfies the *Morrison v. Olson* Test.........................17

    C.  The Special Counsel is Not an Inferior Officer Under *Edmond* ...........19

    D.  The Twenty-Fifth Amendment Is Not An Issue.......................................28

III. The Special Counsel, As an Inferior Officer, Was Not Appointed by the "Head of the Department."............................................................................................31

A.  Attorney General Sessions' Recusal From the Russia Investigation Did Not Make the Deputy Attorney General the "Head of the Department" for Purposes of the Appointments Clause by Operation of 28 U.S.C. § 508. ........................33

B.  A Single-Issue Recusal Does Not Give Rise to a "Vacancy."....................34

C.  A Single-Issue Recusal Is Not an "Absence" or "Disability". ...................36

D.  28 U.S.C. § 510 Does Not Allow the Attorney General to Delegate to the DAG Authority to Appoint the Special Counsel, and In Any Event, No Such Delegation Was Made.........................................................................................41

CONCLUSION ...................................................................................... 44

ADDENDUM

CERTIFICATE OF COMPLIANCE AND SERVICE

# TABLE OF AUTHORITIES[1]

**Constitutional Provisions:**

Vesting Clause, U.S. Const., Art. II, § 1, cl. 2.....................................................7-8

Opinions Clause, U.S. Const., Art. II, § 2, cl. 1.....................................................30

*Appointments Clause, U.S. Const., Art. II, § 2, cl. 2 ............ 1,7,8,14,16,19,30,32

Excepting Clause, U.S. Const., Art. II, § 2, cl. 2...........................................1,32,43

Presidential Succession, U.S. Const., Amend. XXV, § 4...........................29,30,31

**Cases:**

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) ................................................16

*Comptroller of Treasury of Md. v. Wynne,* 135 S. Ct. 1787, 1806 (2015)............24

*Edmond v. United States*, 520 U.S. 651, 660 (1997) ...................... 8,17,19,20,23

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) .................. 26,27-28

*Exxon Corp. v. Eagerton*, 462 U.S. 176, 189 (1983) ...........................................24

*Free Enterprise Fund v. P.C.A.O.B.,* 537 F.3d 667 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *rev'd in part,* 561 U.S. 477 (2010) ...............................................31

*Freytag v. Comm'r*, 501 U.S. 868 (1991) ......................................................... 9,31

*In re Leefe*, 2 Barb. Ch. 39 (N.Y. Ch. 1846) ........................................................41

*In re Sealed Case,* 829 F.2d 50 (D.C. Cir. 1987) .............................. 5,12,13,14,15

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) ...............................................................................17,19,20,23

---

[1] Authorities chiefly relied on are marked with asterisks.

*Moog v United States,* No. MISC. CIV-90-215E, 1991 WL 46518
(W.D.N.Y. Apr. 1, 1991) ..................................................................x37

*Morrison v. Olson,* 487 U.S. 654 (1988) .....................................15,17,18

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018)...................................26,27

*NLRB v. Bell Aerospace Co.*, 416 U.S. 267 (1974) ..............................................18

*NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014) .................................................. 16

*N.L.R.B. v. Southwest General, Inc.*, 137 S. Ct. 929 (2017) .......................... 31,35

*Recording Indus. Ass'n of America v. Verizon Internet Servs., Inc.,*
   351 F.3d 1229 (D.C. Cir. 2003) .......................................................... 6

*Small v. United States*, 125 S. Ct. 1752 (2005) ................................................... 42

*United States v. Concord Mgmt. & Consulting LLC,* 317 F. Supp. 3d  598
   (D.D.C. 2018*)* ................................................................ 11,12,21,24

*United States v. Germaine*, 99 U.S. 508 (1878) ........................................... 22, 31

*United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006) ..................................39

*United States v. Nixon*, 418 U.S. 683 (1974) ......................................... 5,12,13,25

**Statutes:**

5 U.S.C. § 3105 (Appointment of Administrative Law Judges) .........................12

5 U.S.C. § 3345 (Federal Vacancies Reform Act).....................................33,34,39

28 U.S.C. § 508(a) (Vacancy in the Office of Attorney
General)........................................................................... 6,32,33,34,35,37,38,39

28 U.S.C. § 509 (Functions of the Attorney General) ................................... 12,13

28 U.S.C. § 510 (Delegation of Authority)............................... 6,12,13,32,41,42,44

28 U.S.C. § 515 (Authority for Legal Proceedings; Commission, Oath, and Salary for Special Attorneys) ............................................................... 5,9,10,12,13

28 U.S.C. § 516 (Conduct of Litigation Reserved to Department of Justice) ...... 39

28 U.S.C. § 519 (Supervision of Litigation) ........................................................ 11

28 U.S.C. § 533 (Investigative and Other Officials; Appointment) ...... 10,11,12,13

*28 U.S.C. § 541(a) (United States Attorney) ...................................................... 15

28 U.S.C. § 543 (Special Attorneys) .................................................................... 10

28 U.S.C. § 551 (Agency) ...................................................................................... 5

28 U.S.C. § 1291(Final Decisions of District Courts) ........................................... 1

Judiciary Act of 1789, 1 Stat. 73 ........................................................................ 15

Act of May 8, 1792, ch. 37. § 8, 1 Stat. 279, 281 ............................................... 37

Act of Feb. 20, 1863, ch. 45, 12 Stat. 656 ........................................................... 37

Vacancies Act of 1868 ......................................................................................... 37

**Code of Federal Regulation:**

28 C.F.R. § 0.180 (Documents Designated as Orders) ............................... 33,42,44

28 C.F.R. § 0.181 (Requirements for Orders) ..................................................... 33

28 C.F.R. § 0.182 (Submission of Proposed Orders to the Office of Legal Counsel) ......................................................................................... 33,42,44

28 C.F.R. § 0.183 (Distribution of Orders) .......................................................... 33

28 C.F.R. § 600.7(b) (Conduct and Accountability) .................................. 21,22,23

28 C.F.R. Part 600 (General Powers of Special Counsel) ...................................... 5

**Other Authorities:**

Akhil Reed Amar, Statement, *Testimony Before the S. Comm. on the Judiciary*, 115th Cong. 6-7 (2017) ...................................................................18

*Appointment of Assistant Appraisers at New York*, 15 Op. Att'y Gen. 449 (1878) ...........................................................................8

Josh Blackman, *Can the Special Counsel Regulations Be Unilaterally Revoked?*, LAWFARE (July 5, 2018, 7:22 AM) http://www.lawfareblog.com/can-special-counsel-regulations-be-unilaterally-revoked. ........................................28

Susan Low Bloch, *The Early Role Of The Attorney General In Our Constitution Scheme: In The Beginning There Was Pragmatism*, 198 Duke L. J. 561 (1989) .................................................................15

*Steven G. Calabresi, *Congress Has Not Created an Inferior Office of Special Counsel Since 1999*. Northwestern Pub. Law Research Paper No. 18-17, 2018 https://ssrn.com/abstract=31991430 ..............................................8

*Steven Calabresi, *A federal judge's alarming reason for upholding the Mueller crusade*, The Hill (Sept. 10, 2018) ...........................................17

DOJ Office of Legal, *Assignment of Certain Functions Related to Military Appointments*, 29 Op. O.L.C. 132, 132 (2005) ...................................43

Robert H. Jackson, *The Federal Prosecutor, Address at Conference of United States Attorneys* (Apr. 1, 1940) ..................................................15

Sharon LaFraniere, *Judge Questions Whether Mueller Has Overstepped His Authority on Manafort*, N.Y. TIMES (May 4, 2018), https://www.nytimes.com/2018/05/04/us/mueller-authority-paul-manafort-case-judge.html ..........................................................................20

James Madison, *Notes of Debates in the Federal Convention of 1787* (1893, reprint 1987). ........................................................43

Jennifer Mascott, *Who Are "Officers of the United States"?*, 70 Stan. L. Rev. 443 (2018) .................................................................43

The Records of the Federal Convention of 1787 627 (Max Farrand ed. 1911) http://avalon.law.yale.edu/18th_century/debates_915.asp .........................30

2 Records of the Federal Convention of 1787 539 (Max Farrand ed., 1911) ...... 30

Senate Report No. 66, 89th Cong., 1st Sess., Feb. 10, 1965  ...............................31

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction to enforce a subpoena issued by the Special Counsel to Appellant to appear before the grand jury on June 29, 2018.  After denying the motion to quash the subpoena on July 31, 2018, the court issued a contempt order on August 10, 2018, but stayed the order pending appeal.  Appellant filed his notice of appeal on August 13, 2018.  This Court has jurisdiction under 28 U.S.C. 1291 to review the final order.

## STATEMENT OF THE ISSUES

1.  Whether Congress, under the Appointments Clause of Article II, § 2, of the U.S. Constitution, "established by law" the appointment of a private attorney to serve as a special counsel as an "Officer of the United States."

2.  Whether Special Counsel Robert  S. Mueller III (the "Special Counsel") was unconstitutionally appointed because he is a "principal officer" under the Appointments Clause of Article II, and thus was required to be—but was not— appointed by the President with the Advice and Consent of the Senate.

3.  Whether Congress "by Law vest[ed] the Appointment" of the Special Counsel as an "inferior Officer []" in "Head of the [Justice] Department[ ]," and thus, under the "Excepting Clause," was unconstitutionally appointed because he

1

was required to be —but was not— appointed by Attorney General Jeff Sessions rather than by Deputy Attorney General Rod Rosenstein.

## STATUTES AND REGULATIONS

The applicable constitutional provisions, statutes and regulations are provided in the body of the brief or Addendum.

## STATEMENT OF THE CASE

The procedural history of this case is fully presented in the District Court's Memorandum Opinion (Op.) at 19-23.  The pertinent facts relevant for this appeal are summarized as follows:

**a. Subpoena history**

1. The Special Counsel issued a renewed grand jury subpoena to Appellant Andrew Miller on June 5, 2018, to produce documents and appear as a witness before the grand jury on June 8, 2018.  His local counsel had objected to the request for documents as being overly burdensome and discussed with the Special Counsel about limiting its scope.

2.  At a hearing before the Court on June 18, 2018, on a motion to show cause and cross-motion to quash the subpoena, the parties reached an agreement on the scope of the documents requested.  The court ordered that the documents be produced on June 25, 2018 and ordered the witness was to appear before the grand jury on June 29, 2018.

3.   On June 25, 2018, the witness provided the documents to Special Counsel as ordered and agreed to.  On June 28, 2018, the day before he was ordered to appear before the grand jury, his new counsel filed a motion to quash the subpoena on the basis that the Special Counsel was unconstitutionally appointed under the Appointments Clause of the Constitution.

4.   After expedited briefing on the motion to quash, the Court held a hearing on July 18, 2018.  On July 31, 2018, the Court issued an Order and a 92-page Memorandum Opinion denying the motion to quash.  Appx. C.  The witness was ordered to appear before the grand jury on August 10, 2018.

5.   On August 9, 2018, the witness filed a motion requesting that he be held in contempt explaining that he was respectfully declining to appear the next day before the grand jury and requesting a stay of any such contempt order so that he could appeal it to this Court.

6.   On August 10, 2018, a contempt hearing was held, at the conclusion of which the Court held the witness in contempt but stayed its order on the condition that a notice of appeal be filed by 9:00 AM August 14.  Appx. B.  On August 13, 2018, Appellant filed his notice of appeal.

**b. Attorney General's recusal and appointment of the Special Counsel**

7.   On February 9, 2017, Attorney General Jeff Sessions was sworn into office having been confirmed by the Senate.

8. On March 2, 2017, Attorney General Sessions announced that he was recusing himself "from any existing or future investigations of any matters arising from the campaigns for the President of the United States." Op. at 17.

9. On April 25, 2017, Rod Rosenstein, who was nominated by President Trump to be the Deputy Attorney General on February 1, 2017, was confirmed by the Senate and was soon thereafter appointed by the President and sworn into office.

10. On May 9, 2017, two weeks after his appointment, Rosenstein sent a three-page Memorandum to General Sessions recommending that FBI Director Comey be fired for the way he handled the investigation of Hillary Clinton's emails during the 2016 election, particularly for his public statements on the matter contrary to FBI and DOJ policy.

11. On that same day, Sessions sent a one paragraph letter to the President attaching Mr. Rosenstein's Memorandum and recommending Comey's removal as FBI Director.

12. On that same day, President Trump sent a letter to Director Comey terminating him from office citing both Rosenstein's and Sessions' recommendations.

13. One week later, on May 16, 2017, Robert Mueller was interviewed by President Trump for the position of FBI Director but was not hired.

4

14.  The next day, on May 17, 2017, Rosenstein appointed Mueller as Special Counsel[1]

## SUMMARY OF ARGUMENT

1. The appointment of the Special Counsel violated the Appointments Clause of the Constitution because Congress did not enact any statute clearly authorizing his appointment.  The two statutes relied upon by the court below, 28 U.S.C. 551(1) and 515(b), alone or in combination, do not provide such authority. Moreover, neither *United States v. Nixon*, 418 U.S. 683 (1974) nor *In re Sealed Case,* 829 F.2d 50 (D.C. Cir. 1987), provide support for the appointment since the statutory provisions were not discussed at any length.  Clear language authorizing the appointment of inferior officers is required because it alters the default manner of appointing officers under Appointments Clause.

2.  Because of his extraordinary powers as a prosecutor, coupled with the lack of supervision and control over this conduct, the Special Counsel, like U.S. Attorneys, was required to be appointed by the President and confirmed by the Senate.  The district court's conclusion that the Special Counsel Regulations could be revoked "immediately" and thereby subject the Special Counsel to be fired at will and thus place him in an inferior officer status is wrong for three reasons.

---

[1]  Op. at 18-19.  The Special Counsel's Order and Regulations, 28 C.F.R. Part 600 , are reproduced in the Addendum.

First, hypothesizing what the legal implications could be *in futuro* is an

impermissible exercise to determine current legal duties.  Second, any attempt to

revoke the regulations is subject to judicial review.  Third, in any event, such

regulations cannot be revoked by the DAG since Attorney General is charged by

law to issue or revoke such regulations and has not delegated that authority to the

DAG.

3. Even if the Special Counsel's appointment as an inferior officer was

authorized by statute, the Excepting Clause requires that he be appointed by the

Head of the Department, which is Attorney General Jeff Sessions. Instead, Mr.

Mueller was unconstitutionally appointed by Deputy Attorney General (DAG) Rod

Rosenstein who assumed the role of Acting Attorney General because of Sessions

recusal from the investigation.   The recusal of Sessions from the investigation did

not trigger a "disability" under 28 U.S.C. 508(a) that empowered the DAG to

assume the appointment powers of the Attorney General.  Moreover, the Attorney

General did not delegate any of his powers to the DAG under 28 U.S.C. 510, nor

could he constitutionally delegate his appointment authority.

## APPLICABLE STANDARD OF REVIEW

Appellate review of orders "based upon errors of law" is "plenary" or de

novo review. *Recording Indus. Ass'n of America v. Verizon Internet Servs., Inc.,*

351 F.3d 1229, 1233 (D.C.Cir. 2003). The issues presented in this appeal are "pure issues of law." Op. at 23.

## ARGUMENT

### I. Congress Did Not "By Law" Vest in the Attorney General the Power to Appoint Private Citizens to Be Special Counsel Inferior Officers

The Appointments Clause of Article II provides that:

> [The President  shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established **by Law**: but the Congress may **by Law vest** the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II,  § 2 (emphasis added). The Appointments Clause provides that, as a default rule, all Officers of the United States must be nominated by the President, confirmed by the Senate, and then appointed by the President. Recognizing, however, that principal officers will usually need the help of inferior officers to do their jobs, the Appointments Clause also allows Congress to create **by Law** other officers and **by Law to vest** the appointment of inferior officers in the President alone, in the Courts of Law or in the Heads of Departments. Such vesting laws, like the Vesting Clauses of the Constitution, must clearly state that they are **vesting** the power to appoint inferior officers in the Head of a Department or that power remains with the President and the Senate. In this case, Congress has

not "**by Law**" clearly **vested** in the Acting Attorney General the power to appoint an inferior officer Special Counsel.  As a result, Robert Mueller's appointment is unlawful.[2]

Here, whether the Special Counsel is deemed a principal or inferior officer, his appointment by the Deputy Attorney General violates the strict requirements of the Appointments Clause because the Special Counsel was neither appointed by the President and confirmed by the Senate, nor was he appointed pursuant to authority vested by the express terms of a congressional enactment.  At a minimum, the Special Counsel is an "inferior Officer[]" and thus could only have been appointed by an official with power specifically conferred by Congress.  The Deputy Attorney General did not have clear and specific statutory authorization to appoint the Special Counsel, however, and his appointment accordingly is unconstitutional.[3]

---

[2] *See* Steven G. Calabresi, *Congress Has Not Created an Inferior Office of Special Counsel Since 1999*. Northwestern Pub. Law Research Paper No. 18-17, 2018 https://ssrn.com/abstract=31991430

[3] The need for express and specific statutory language authorizing appointment follows from the fact that Congress's exercise of its power under the Excepting Clause alters the "default manner of appointment for inferior officers": Presidential appointment and Senates confirmation.  *Edmond v. United States*, 520 U.S. 651, 660 (1997); *see also United States v. Janssen*, 73 M.J. 221, 224 (C.A.A.F. 2014) ("[W]e interpret *Edmond* to require statutory language specifically granting the head of a department the power to appoint inferior officers."); *Appointment of Assistant Appraisers at New York*, 15 Op. Att'y Gen. 449, 450 (1878) (concluding that Congress did not authorize appointment "[w]here there is no express

8

A. **No statute provides authority to appoint the Special Counsel.**

The district court found that two statutes provide for the appointment of a Special Counsel: 28 U.S.C. § 533(1) and 28 U.S.C. § 515(b). But neither one, alone or in combination, provide such authority.

Section 533 authorizes the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States[.]" The appointment authorization in § 533 is strictly limited and has no bearing on Mueller's appointment. It is not a general authorization to the Attorney General to appoint private attorneys, let alone one who brings indictments in his own name on behalf of the United States without any U.S. Attorney or high-ranking Department of Justice officer. As § 533's title explains, it specifically and solely authorizes the appointment of "Investigative and other law enforcement *officials*" connected with the Federal Bureau of Investigation. 28 U.S.C. 533 (emphasis added).

Judge Friedrich correctly analyzed Section 533(1):

Section 533's placement suggests interpreting the provision within the narrower context of its surrounding provisions governing the FBI and its investigations, not as a broad grant of authority for the Attorney General to appoint inferior officers generally and a Special Counsel in particular.

---

enactment" providing for it). The exception thereby effects a waiver of the constitutionally prescribed advice-and-consent default rule. *See Freytag v. Comm'r*, 501 U.S.868, 882 ) (1991) (explaining that the "principle of separation of powers is embedded in the Appointments Clause").

*United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 0598,  *27 (2018).

Section 515(b) provides no authority to appoint the Special Counsel either. It states:

> Each Attorney specially retained under the authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law.  Foreign counsel employed in special cases are not required to take the oath.  The Attorney General shall fix the annual salary of a special assistant or special attorney.

This, plainly, is not a grant of new power to *retain* or to hire new inferior officers, but simply provides on its face that attorneys, who at most are mere employees who have already been hired or retained, can also have a title and a salary.  Section 515(b) is phrased in the past tense and refers to hires that have already been made.

To be sure, there is in fact a provision in Title 28 authorizing the Attorney General to hire persons, who can then be denominated and commissioned as "special assistant[s]" or "special attorney[s]"| under section 515(b).  28 U.S.C. § 543(a) (entitled "Special Attorneys").  The Special Counsel does not invoke this provision for obvious reasons—it authorizes the Attorney General only to "appoint attorneys *to assist United States attorneys* when the public interest so requires, including the appointment of qualified tribal prosecutors and other qualified attorneys to assist in prosecuting Federal offenses committed in Indian country." This is an explicit authorization for hiring special assistants or special counsels.

But manifestly, Mueller was not appointed *to assist U.S. Attorneys or to prosecute in Indian country*.  He was hired as a stand-alone officer who *replaces* rather than *assists* the functions of U.S. Attorneys.

Section 543 thus provides the hiring authority that is cross-referenced but not created by section 515.  The latter provision allows the Attorney General of the United States to move his pieces in the criminal law enforcement chess game all over the board, but it does not give him the power to create a new Queen.

The remainder of Title 28 confirms this conclusion.  For example, Section 519 says that the Attorney General has the power to "direct all. . . special attorneys appointed under section 543 of this title in the discharge of their respective duties." But this cross-reference also creates no new inferior officers, just as section 515 creates no new inferior officers.  Both clauses refer to attorneys already appointed by law who are assisting U.S. Attorneys, which is not what Robert Mueller is doing.

Here again, the district court in *Concord* got it right.  Noting the verb tenses employed in § 515(b), the court found that "whether § 515 refers to past or present conditions, it does not appear to convey the power to bring those conditions about."  *Concord*, 317 F. Supp. 3d at 621.  The court also noted § 515(b)'s "sharp[]" contrast "with the numerous other statutes that do confer the power to appoint in a straightforward manner"—both proximate to § 515(b) and dispersed

11

throughout the U.S. Code. *Id.* (citing appointment statutes); *see also* 5 U.S.C. § 3105 (""Each agency shall appoint as many administrative law judges as are necessary").

### B. No precedent holds that Congress has authorized by statute the appointment of the Special Counsel.

The district court, both here and in *Concord*, found that two controlling precedents hold that the §§ 515 and 533 provide the requisite authority to appoint the Special Counsel: *United States v. Nixon*, 418 U.S. 683 (1974) and *In re Sealed Case,* 829 F.2d 50 (D.C. Cir. 1987). Neither decision can carry the weight.

*Nixon*'s purportedly "controlling" analysis consists of a single sentence—a passing and unnecessary statement that Congress has "vested in [the Attorney General] the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. 509, 510, 515, 533." 418 U.S. at 694. This is no more than dictum because, contrary to the district courts' view, it was not necessary to the Court's justiciability analysis. Indeed, the district court acknowledged that "no party in *Nixon* had disputed that Congress had authorized the Attorney General to appoint the Watergate Special Prosecutor." Op. at 68. And the justiciability analysis did not turn on whether the Attorney General had statutory authority to appoint the Special Prosecutor—it turned on whether a dispute between the President and another Executive Branch official—there, the Special Prosecutor— could be adjudicated by an Article III court. The pivotal fact was that the Special

12

Prosecutor was a member of the Executive Branch, something none of the parties disputed.[4]  Far from a "necessary" step in the *Nixon* Court's reasoning, then, the discussion of the Special Prosecutor's appointment was merely unnecessary background.

Not only was the one-sentence statutory analysis not necessary to the Supreme Court's justiciability holding in *Nixon*—the Court there did not examine or even quote the texts of 28 U.S.C. 509, 510, 515, and 533, or compare them to other statutes on the books in 1973—in Title 28 and elsewhere—by which Congress vested in other entities the power to appoint inferior officers.  Nor did the Court acknowledge the fact that § 515(b) refers to employees already "retained" rather than granting a new power to appoint inferior officers, or that § 533 is embedded in the statutes governing the FBI.

*Sealed Case* is not controlling either.  As in *Nixon*, the Court in Sealed Case stated—without analysis—that various statutes, including § 515, "accommodat[ed] the delegation" of power to Independent Counsel Lawrence Walsh.  *In re Sealed Case,* 829 F.2d at 55.  But Lt. Colonel Oliver North, the appellant in the case, did not contest the Attorney General's general statutory authority to appoint someone already within DOJ at the time of his appointment.  Rather, he argued that the

---

[4]     The Government's briefing confirms as much.  *See* Brief for the United States, *United States v. Nixon*, 418 U.S. 683 (1974) Nos. 73-1766, 73-1834, at 17, 27-30.

Independent Counsel statute foreclosed use of that authority because it was the exclusive means at that time of appointing someone in that capacity. *See* Brief of Appellant at 13-21, *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) (No. 87-5247, at 13-21 (discussing 28 U.S. § 597(a)). A review of the appellate briefing in *Sealed Case* fully confirms that the Court's reference to statutory appointment authority there is not binding in this case involving appointment of a private attorney as Special Counsel.

In short, there is no statutory authority to appoint the Special Counsel or to authorize the promulgation of regulations to provide for such appointment.

## II. The Special Counsel's Appointment Is Unconstitutional Because He Is A Principal Officer Not Appointed By The President With The Advice And Consent Of The Senate

The Appointments Clause, as construed by controlling precedent, requires that all "officers of the United States" be appointed by the President with the advice and consent of the Senate. That is the default rule and only Congress can overcome it with a statute that *clearly* confers appointment authority on the President, the courts, or the "Heads of Departments." Because no such statute exists, and because the Special Counsel, with his broad prosecutorial powers, is at least on par with U.S. Attorneys who have been appointed by the President and confirmed by the Senate, his appointment was unconstitutional *ab initio*.

### A.  The Special Counsel Possesses Extraordinary Power

"Federal prosecutors are granted broad authority under our laws to choose their targets and pursue their investigations.  As former Attorney General Robert H. Jackson stated, '**[t]he prosecutor has more control over life, liberty, and reputation than any other person in America.  His discretion is tremendous.**'" Op. at 2 (quoting  Robert H. Jackson, The Federal Prosecutor, Address at Conference of United States Attorneys (Apr. 1, 1940)) (emphasis added).

Given this power and discretion, "from the very beginning, [U.S. Attorneys] were appointed by the President with the advice and consent of the Senate, and were removable by the President."  *In re Sealed Case*, 838 F.2d at 511 n.55 (D.C. Cir. 1988) (citing 1 Stat. 92 (1789)), *rev'd sub nom. Morrison v. Olson*, 487 U.S. 654 (1988).  The President "went to the Senate for advice and consent, presumably reading" the Appointments Clause "to support and perhaps require this approach" when it came to U.S. Attorneys.  Susan Low Bloch, *The Early Role of the Attorney General in Our Constitution Scheme: In the Beginning There Was Pragmatism*, 198 Duke L. J. 561, 567 n.24.

Congress has followed suit.  Although the Judiciary Act of 1789 "did not specify how the Attorney General or the district attorneys would be appointed[,]" Congress later enacted a provision aligned with the President's customary approach—requiring Presidential appointment and Senate confirmation for each

15

U.S. Attorney.  *See* 28 U.S.C. § 541(a).  Congress did so expressly "to conform …
with the Constitution[,]" Historical Notes to § 541(a), presumed as it was to know
the requirements of the Appointments Clause.  *Cannon v. Univ. of Chicago*, 441
U.S. 677, 697-98 (1979).  This "historical practice"—followed by both political
branches—is due "significant weight" in interpreting the Appointments Clause.
*NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014).

This longstanding practice is consistent with how Congress and the
Executive Branch treat the appointment of important and powerful public officials.
Deputy and Assistant Cabinet Secretaries, and permanent U.S. Attorneys are
principal officers, even though they can be fired by the Cabinet Secretary they
report to as well as by the President.  No one reasonably could conclude, for
example, that the Deputy Secretaries of State and Defense or the Deputy Attorney
General or Solicitor General of the Justice Department could be appointed as
inferior officers.

Yet if the district court's reasoning were adopted, nothing would prevent the
Attorney General from appointing a "shadow" cadre of Special U.S. Attorneys, a
Special Solicitor General, and similar subcabinet officials as inferior officers.
Stated another way, the lower court's analysis would support a federal government
where there is only one principal officer who is the Head of the Department, and

all other subcabinet officials could be appointed by them unless Congress later enacted laws to vest their appointment in the President alone or courts of law.[5]

The work that a Special Counsel like Robert Mueller does is at least as important and impactful as the work done by any number of permanent U.S. Attorneys, and likely more so.  In fact, Mueller is more powerful than is a permanent U.S. Attorney because he has nationwide jurisdiction and can indict foreign citizens and corporations as he did when he indicted more than a dozen Russian citizens, officials, and business entities, which affect the conduct of our foreign policy.  In short, Mueller can be accurately characterized as a U.S. Attorney-at-Large.

Appellant submits this Special Counsel's extraordinary authority, coupled with his insulation from being removed from office at will, satisfies the test laid out in *Morrison*, *Edmond*, and *Intercollegiate* that he is a principal rather than an inferior officer.

### B. The Special Counsel Satisfies the *Morrison v. Olson* Test

While *Morrison v. Olson* has been widely regarded as being supplanted by subsequent Appointments Clause cases, Appellant submits that if that Court were to have considered the officer status of this Special Counsel, it would have come

---

[5]  *See* Steven Calabresi, *A federal judge's alarming reason for upholding the Mueller crusade*, The Hill (Sept. 10, 2018). http://thehill.com/opinion/judiciary/405793-a-federal-judges-alarming-reason-for-upholding-the-mueller-crusade.

out the other way.   Under *Morrison*, an inferior officer is marked by four

characteristics: (1) removability by a higher executive official; (2) performance of

only "certain, limited duties"; (3) limited in jurisdiction; and (4) limited tenure.

The Special Counsel plainly is not limited in his duties.   The difference

between Alexia Morrison's duties and powers and those of the Special Counsel

could not be more stark.  As Professor Akhil Amar testified:

> [Morrison] was focused on only one person, who was out of government at the time: Ted Olson.   In contrast, Robert Mueller is apparently investigating *the President of the United States* for possible obstruction of justice in firing the *Director of the FBI*, as well as at several other people involved in *a major national scandal*, which involves alleged *Russian tampering with a presidential election*.   The Mueller investigation is thus vastly wider and more consequential for the republic than was Alexia Morrison's.   Even under the *Morrison* test, it would be preposterous to say that Robert Mueller is just like Alexia Morrison, conducting an investigation of small and limited scope.
>
> *Testimony Before the S. Comm. on the Judiciary*, 115th Cong. 6-7 (2017) (statement of Akhil Reed Amar, Sterling Professor of Law and Political Science, Yale Law School) (emphasis in original).[6]

The Special Counsel's jurisdiction also is far from limited.   The

prosecutorial power wielded by this Special Counsel is clearly extraordinary.  And

---

[6] In response to allegations that Mueller is indeed formulating policy by bringing novel criminal charges in some cases, the district court responded that "[t]he ability to raise a novel legal theory, however, is not the same as policymaking power, which . . . the Special Counsel lacks.  *See* Appointment Order ¶¶ (b), (c)."   Op. at 51.  Add. at 1.  Not so.  Litigation is a powerful tool for making policy. Government agencies, particularly the NLRB, use enforcement actions instead of rulemaking in order to establish policy. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 269 (1974) (reversing an attempt to force the Board to use rulemaking).

the degree of authority he wields strongly supports his principal-officer status under the Appointments Clause. *See, e.g., Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1337 (D.C. Cir. 2012) (examining degree of authority of Copyright Royalty Judges in assessing whether they are principal or inferior officers).

The district court found that the "extraordinary authority" standard offered by Appellant, as opposed to the easily met "significant authority" standard in *Edmond* that marks the distinction between officers and employees, is too subjective and difficult to administer. Op. at 63-64. But the very nature of the Appointments Clause analysis calls for weighing factors by the Court in light of the particular features of the officer at issue; and while admittedly it may be "somewhat subjective in close cases" (Op. 64), this is not a close case. In any event, as will be demonstrated, the *Edmond* test has been satisfied.

### C. The Special Counsel is Not an Inferior Officer Under *Edmond*

A decade after *Morrison*, the Supreme Court revisited the principal-inferior officer distinction in *Edmond v. United States*, 520 U.S. 651 (1997). There, the Supreme Court "emphasized three factors" in making the distinction—whether an officer is (1) "subject to the substantial supervision and oversight of" another Executive officer who is, or is "subordinate" to, a principal officer; (2) "removable . . . without cause;" and (3) subject to "another executive branch entity's . . . power

to reverse the [officer's] decisions," such that the officer has "'no power to render a final decision on behalf of the United States unless permitted to do so by other Executive Officers.'" *Intercollegiate Broad. Sys.*, 684 F.3d at 1338 (citing *Edmond*, 520 U.S. at 664–65).

Appellant submits that the Special Counsel fails to satisfy all three factors.

### 1.  The Special Counsel is not "subject to substantial supervision and oversight."

With regard to the first *Edmond* factor, the regulations clearly give the Special Counsel wide discretion to conduct his investigation, with the Acting AG being given little if any authority to supervise him.  In practice, the Acting AG appears to take a deferential hands-off approach to the work of the Special Counsel, prompting judicial criticism for the way the Special Counsel has strayed from the bounds of his original jurisdiction.[7]  To be sure, the Special Counsel is to follow the Department of Justice policies, including those found in the U.S. Attorney's Manual, as do all U.S. attorneys who are appointed by the president and

---

[7] Sharon LaFraniere, *Judge Questions Whether Mueller Has Overstepped His Authority on Manafort*, N.Y. TIMES (May 4, 2018), https://www.nytimes.com/2018/05/04/us/mueller-authority-paul-manafort-case-judge.html ("I don't see what relation this [Manafort] indictment has with anything the special counsel is authorized to investigate.")

confirmed by the Senate.  But as for the Special Counsel being subjected to

"substantial supervision and oversight," Appellant submits that Judge Friedrich's

analysis is right on target:

> At most, the Acting Attorney General is able to countermand actions that—
> after giving "great weight to the views of the Special Counsel—are so
> inappropriate or unwarranted under established Departmental practices."
> 28 C.F.R. § 600.7(b).  As noted, it is unclear from the provision what
> "established Departmental practices" shape the Special Counsel's actions.
> And troublingly, the importance of the decision and the Acting Attorney
> General's desired course of action are not considerations specified in the
> text.  The provision prevents the Acting Attorney General from
> countermanding a decision with which he disagrees, no matter how
> vehemently, so long as the decision does not rise to the level of "so
> inappropriate or unwarranted under established Departmental practices."  *Id.*

*Concord*, 317 F. Supp. 3d at 611-12.  Judge Friedrich concludes that "[a]t the very

least, some Special Counsel decisions remain insulated from review or

countermand."  In short, there clearly is no "*substantial* supervision and oversight"

of the Special Counsel's work under *Edmond*.  *Id.* (emphasis added).

### 2. *The Special Counsel has the power to render a final decision on behalf of the United States without permission from anyone else at the Department of Justice.*

The court below asserts that Section 600.7(b), "while no model of clarity,"

could be read to theoretically allow the AG to countermand a decision by the

Special Counsel. Op. at 37.  From this, the court leaps to the conclusion that the

Special Counsel "ha[s] no power to render a final decision on behalf of the United

States **unless permitted to do so** by other Executive officers."  Op. at 43 (citing

21

*Edmond*, 520 U.S. at 665) (emphasis added). But the regulations nowhere require the Special Counsel to seek approval or get permission from the AG before making final decisions about who to investigate, indict, and prosecute. At most, the Special Counsel may notify the AG of proposed indictments, plea bargains, and the like. But he does not need the approval of the AG to make those decisions.

The court then back-pedals from its statement that the Special Counsel cannot make final decisions "unless permitted to do so." Instead, the court states that, "[t]o require a superior officer personally to approve all significant decisions made by one of the 'numerous,' . . . inferior officers he directs and supervises, moreover, would be infeasible given the realities of modern governance." *Id*. at 46 (citing *United States v. Germaine*, 99 U.S. 508, 510 (1878)). Given the reality that there is only one Special Counsel, and a very powerful one at that, it is certainly not asking too much that the AG approve the Special Counsel's significant decisions that have the effect of depriving persons of their liberty interests, rather than being merely advised about them.

### 3. The Special Counsel is not removable without cause.

The Special Counsel regulations insulate the Special Counsel from being removed from his position for "misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." 28 C.F.R. § 600.7(d). This, too, supports his principal officer status.

Here again, Judge Friedrich's analysis is correct:

There is reason to think, however, that the Special Counsel regulations afford the Special Counsel more substantial protection against removal, and thus risk rendering him a principal officer.  In *Intercollegiate*, for example, a similar removal standard "for misconduct or neglect of duty" "support[ed] a finding that [the officers at issue] are principal officers."  684 F.3d at 1339–40; *see also Edmond*, 520 U.S. at 664–665 (concluding that the officers at issue were inferior officers in part because they were removable "without cause").  And in general, for-cause removal standards are often understood to provide some degree of independence and protection beyond mere failure to accept supervision.  *See, e.g.*, *PCAOB*, 561 U.S. at 502–03; *PHH Corp.*, 881 F.3d at 77–78 (majority opinion); *id* at 191 n.16 (Kavanaugh, J., dissenting).  The Special Counsel regulations themselves suggest the same.  As discussed above, the regulations—at most—only require the Special Counsel to follow the Acting Attorney General's countermand orders for actions deemed "so inappropriate or unwarranted under established Departmental practices."  28 C.F.R. § 600.7(b); *see supra* Section III.A.1.a.  With regard to actions that do not rise to that level, the regulations **do not** clearly require the Special Counsel to follow orders, so it is difficult to see how "good cause" would arise from the Special Counsel's refusal to follow orders.  Under such circumstances, the Special Counsel could rightly resist removal on the ground that he was proceeding in full compliance with the regulations, while the Acting Attorney General would not have a similarly steady leg to stand.  After all, the Acting Attorney General would be seeking to remove the Special Counsel for not following orders that the Special Counsel **was under no duty to follow.**
…

**Therefore, the Special Counsel's for-cause removal protection, if substantial, "supports a finding" that the Special Counsel is a principal officer.**  *Id.* at 1339.

*Concord*, 317 F. Supp. 3d at 613-14 (emphasis added).

Appellant submits that considering the totality of the regulations both on

paper and in practice, the for-cause removal protections are substantial in this case.

23

### 4. The "for cause" standard in the Special Counsel regulations cannot be rescinded "immediately" to remove the Special Counsel

Both Judge Howell and Judge Friedrich concluded that, regardless of the "good cause" protection from removal, the regulations themselves can be rescinded "immediately" by the Acting Attorney General. Accordingly, the Special Counsel is removable at will after all, thereby making him an inferior officer. Op. at 30; *Concord,* 317 F. Supp. 3d 598, 615-17 (D.D.C. 2018). This is wrong.

#### a. Hypothetical revocation of the regulations is irrelevant.

In the first place, hypothesizing how these regulations *might be* easily revoked does not mean that the analysis of the *present* operation of the regulations, which insulate the Special Counsel from control, can be dispensed with when determining his officer status. That is no different than saying a statute that provides only for-cause removal of an officer does not support principal-officer status because Congress has the power to, and could, just repeal that statute in the future. Constitutional law does not turn on hypotheticals and contingencies. *See, e.g.*, *Comptroller of Treasury of Md. v. Wynne*, 135 S. Ct. 1787, 1806 (2015) ("Of course, we do not decide the constitutionality of a hypothetical tax scheme that Maryland might adopt because such a scheme is not before us."); *Exxon Corp. v. Eagerton*, 462 U.S. 176, 189 (1983) (refusing to "strain to reach a constitutional question by speculating that the Alabama courts might in the future interpret" the law in a particular fashion). The Appointments Clause is no different—it looks to

24

existing, objective sources of law that govern an officer's removal, not some

hypothetical future circumstance where those objective sources of law may not

exist.

### b. Special Counsel regulations cannot be immediately revoked.

Second, the lower court's facile conclusion that the Special Counsel

regulations can be immediately revoked, making the Special Counsel subject to

firing at will, is illusory.

When Executive Branch agencies and departments promulgate regulations

or guidance documents, or the President issues executive orders, these documents

reflect considered legal and policy judgments and ought to be taken

seriously.  This is the case irrespective of whether or not they create privately

enforceable rights or where, as here, they are binding on the agency.  Moreover,

contrary to Judge Howell's position,[8] the fact that Executive Branch regulations

can be changed does not render them illusory; to hold otherwise would make

shambles of decades of administrative law, under which Executive Branch

agencies and departments promulgate regulatory policies that ebb and flow as these

agencies exercise their statutorily-bestowed or constitutionally-based discretion.

Thus, the fact that the Attorney General cannot bind himself or his successors

---

[8] Indeed, Judge Howell acknowledges, citing the *Nixon* case, "that regulations have 'force of law' so long as 'extant,'" but nevertheless suggests that because the Attorney General can allegedly rescind the Special Counsel regulations "immediately," these regulations therefore have no legal force. Op. at 30.

when it comes to changing or even repealing outright Special Counsel regulations does not rob them of legal force.

There are, of course, some circumstances where a written document lacks some or all legal impact. This may be the case when a contract is held to be null and void, or a given statute is held to be unconstitutional. Alternatively, one can easily envision a statute that, while having some force, does not run afoul of a particular constitutional limitation against which it is tested.

It should be emphasized that Judge Howell's view that the Special Counsel regulations can be changed immediately (or even very quickly) by the Attorney General, and that this can be done with the utmost ease, is contradicted by well-established case law. In this regard, numerous courts have found that once a given legal or policy position has been enshrined, the Executive Branch entity involved cannot revoke it without going through the appropriate process, which includes providing "a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

The most recent example of the significance of written articulations of Executive Branch policies, even when such articulations were promulgated initially without resort to any notice and comment process, involves a case currently pending in the footprint of this Circuit. The case, *NAACP v. Trump*, involves litigation challenging the Trump Administration's effort to rescind the

Deferred Action for Childhood Arrivals ("DACA") program.[9]  It is worth

emphasizing here that DACA was originally established by a memorandum issued

in 2012 by Secretary of Homeland Security Janet Napolitano.  DACA also was

justified as an exercise of prosecutorial discretion by the Executive Branch and

specifically indicated that it did not create any privately enforceable

rights.  Significantly, in seeking to rescind DACA, the Department of Justice

argued that this policy was unlawful, an assertion buttressed by several judicial

decisions, albeit ones outside of this Circuit.

Yet, despite all of these considerations, Judge Bates denied the

government's motions to dismiss the plaintiffs' challenge to DACA's attempted

rescission.  His key justification was that DOJ's "scant legal reasoning was

insufficient to satisfy the Department's obligation from its prior stated view that

DACA was lawful."  *NAACP v. Trump*, 298 F.Supp.3d 209, 238 (D.D.C.

2018).  Judge Bate's decision specifically drew on the Supreme Court's *Encino*

*Motorcars* case, which struck down a Department of Labor regulation that sought

to narrow the department's construction of a particular statutory exemption on the

grounds that the department's explanation for its regulatory change was

inadequate.

To emphasize, in both *Encino* and the DACA case, the judiciary did not

---

[9] *See NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018).

27

conclude that the disputed Executive Branch actions were unlawful as a matter of substance.  Indeed, there is no doubt that, for example, DACA can be rescinded, but only after providing a fulsome judicially-blessed explanation of why the rescission is sought.  And, the *Encino* Court specifically noted that, merit-wise, the narrowing of the exemption being sought by the Department of Labor was a permissible interpretation of its statutory authority.

The fact that Executive Branch agencies and departments cannot revoke at will even the most informally promulgated written articulations of policy and law and can only do so upon fulsomely articulating the reasons for the change being sought underscores that such written articulations are not hortatory.  Indeed, they are legally binding on the entities that have issued them, until and unless properly revoked.  The same holds true for DOJ's Special Counsel regulations.[10]

D.  **The Twenty-Fifth Amendment is not an issue**

As noted, *supra*, the district court was critical of Appellant's "extraordinary power" case-by-case approach, not unlike that used by the Supreme Court, for determining whether an officer is a principal officer invariably requiring Senate confirmation, or falling within the Excepting Clause as an inferior officer that might not require Senate confirmation.  The court complained that, as a policy

---

[10]  *See generally* Josh Blackman, *Can the Special Counsel Regulations Be Unilaterally Revoked?*, LAWFARE (July 5, 2018).
 http://www.lawfareblog.com/can-special-counsel-regulations-be-unilaterally-revoked.

matter, "[t]he need for objective, determinable and administrable rules is particularly pressing given the role *principal officers* can be called upon to play at times of national emergency." Op. at 64 (emphasis added).

The court then launched into a lengthy, but misguided, *in terrorem* argument that adopting a functional approach in determining whether the Special Counsel is a principal rather than inferior officer would implicate and complicate the Twenty-Fifth Amendment process regarding the circumstances when the Vice President may become the Acting President, because under that amendment, *"the principal officers of the executive departments"* will make that decision. Op. at 64-66 (emphasis in opinion) (citing U.S. CONST. amend. XXV, § 4). The Court concluded that determining who is a "principal officer" under the Appointments Clause, "could exacerbate and the extend the crisis over presidential leadership" and "cast a pall of illegitimacy on the President's tenure. . . ." Op. at 65.

> When confronted with the Twenty-Fifth Amendment administrability problems this would create, the witness's counsel changed his tune, asserting that such officers actually would not be principal officers at all, but "superior" officers, a third type of constitutional officer distinct from principal and inferior officers. [Oral arg. at 27:11–28:22].

Counsel most assuredly did *not* "change his tune"; rather, counsel suggested that the Court was reading off a different sheet of music. In particular, counsel attempted to allay any concerns the Court may have about the applicability of the Twenty-Fifth Amendment by pointing out that the term "principal officer,"

regularly used in modern Appointments Clause cases to denote those officers who

are confirmed by the Senate, in fact does not appear anywhere in the Appointments

Clause, but only in the Opinion Clause in addition to the Twenty-Fifth

Amendment.[11]     Counsel merely proffered using the terms "noninferior" or

---

[11] [11] The term "principal Officer" appears in the Opinions Clause, which says that the President "may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices." U.S. Const. art. II, § 2, cl. 1. The phrasing of the Opinions Clause indicates that there is one and only one "principal" officer in each executive department, meaning that the "principal" officers are really the "Heads of Departments" or Cabinet Secretaries, who are capable of appointing inferior officers if authorized by statute.  That does not mean that all non-principal officers are inferior. The opposite of an inferior officer is a *superior* officer, and many superior officers are technically not "principal officers" but nevertheless are appointed by the President and confirmed by the Senate.  This was very clear at the Constitutional Convention. When the inferior officers provision of the Appointments Clause was introduced by Gouverneur Morris on September 15, 1787, James Madison claimed: "It does not go far enough if it be necessary at all – Superior Officers below Heads of Departments ought in some cases to have the appointment of lesser offices." http://avalon.law.yale.edu/18th_century/debates_915.asp.  Madison clearly had the understanding that the class of "Superior Officers" was broader than the class of department heads (or "principal Officers"). 2 The Records of the Federal Convention of 1787, at 627 (Max Farrand ed. 1911).

 Contrary to Judge Howell's observation that "there is little indication that anyone at the Convention but [Gouverneur] Morris agreed with Madison," Op. at 59), this distinction was recognized by others at the Convention as well.  Rufus King, in discussing the Senate's role in appointments, "did not suppose it was meant that all the *minute* officers were to be appointed by the Senate, or any other original source, but by the *higher* officers of the departments to which they belong."  2 The Records of the Federal Convention of 1787, at 539 (Max Farrand ed., 1911).  The Framers distinguished less important from more important officers, and the scheme of appointment was based upon that distinction.

"superior" officer to clarify the difference. Indeed, the Supreme Court has squarely rejected use of the Twenty-Fifth Amendment in construing the Appointments Clause. *See Freytag v. CIR*, 501 U.S. 868, 887 n.4 (1991) (pointing out that the Twenty-Fifth Amendment's "language, of course, does not control our interpretation of a prior constitutional provision, such as the Appointments Clause" and rejecting reliance on meaning of "executive departments" in the Twenty-Fifth Amendment in determining meaning of "Head of Department" under Appointments Clause).[12]   In short, the court's concerns about the applicability of the Twenty-Fifth Amendment were clearly unfounded.

---

[11] *See also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd*, 537 F.3d 667 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *rev'd in part*, 561 U.S. 477 (2010); S. Rep. No. 89-66, at 2 (1965) ("It is the judgment of the committee that the language 'principal officers of the executive departments' more adequately conveys the intended meaning of Sections 4 and 5, that only those members of the President's official Cabinet were to participate in any decision of disability referred to under these sections."). The uniform modern practice has been to refer to noninferior officers as "principal officers. "" '[F]or purposes of appointment,' the Clause divides all officers into two classes — "'inferior officers'" and noninferior officers, which we have long denominated "'principal'" officers." *NLRB v. SW Gen, Inc*. 137 S.Ct. 929, 945 (Thomas, J., concurring).

[12] *See also* S. Rep. No. 89-66, at 2 (1965) ("It is the judgment of the committee that the language 'principal officers of the executive departments' more adequately conveys the intended meaning of Sections 4 and 5, that only those members of the President's official Cabinet were to participate in any decision of disability referred to under these sections.").

## III.  The Special Counsel, As an Inferior Officer, Was Not Appointed by the "Head of the Department."

Even if the Special Counsel is an inferior officer "established by Law" under the Appointments Clause, that Excepting Clause requires that Congress "by law vest [his] appointment" in the "Head[] of Department[]."  The Head of the Department here for all relevant time periods was and continues to be Attorney General Jeff Sessions.  The Special Counsel was instead appointed on May 17, 2017 by Deputy Attorney General Rod Rosenstein, who purported to be the Acting Attorney General, presumably because Attorney General Sessions had decided to recuse himself from any investigations related to the presidential campaign.  A mere recusal from a single matter, however, does not make the Deputy Attorney General the "Head[] of the Department[]" for purposes of the Appointments Clause.  While General Sessions may have recused himself from a certain investigation, he cannot divest himself of or delegate his constitutional duty to appoint the investigator.

As will be demonstrated, neither 28 U.S.C. § 508(a) regarding the "absence" or "disability" of the Attorney General nor 28 U.S.C. § 510 authorizing the delegation of the Attorney General's functions, provided the Deputy Attorney General with the constitutional authority to appoint the Special Counsel.  In any event, the Special Counsel did not invoke § 510 in the court below, nor was any

function of the Attorney General in fact delegated to the Deputy Attorney General

pursuant to procedures specified in Justice Department regulations.  See 28 C.F.R.

§§ 0.180-183.

### A.  Attorney General Sessions' Recusal From the Russia Investigation Did Not Make the Deputy Attorney General the "Head of the Department" for Purposes of the Appointments Clause by Operation of 28 U.S.C. § 508.

The controlling statute for vacancies in the Department of Justice is 28

U.S.C. § 508 (emphasis added):

> (a) In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General **may** exercise **all the duties of that office**, and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General.

The first part of subsection (a) merely refers to the Deputy Attorney General

(DAG)'s authority to exercise "*all* the duties of that office" upon certain statutory

contingencies occurring.  It does not confer by operation of law an "Acting" officer

title or status upon the DAG.  The Attorney General remains the Head of the

Department for purposes of the Appointments Clause.  Moreover, the "Acting"

designation is specifically defined and triggered by operation of law only pursuant

to 5 U.S.C. § 3345, the Federal Vacancies Reform Act (FVRA), which is

referenced in the second part of Section 508, and which in pertinent part provides:

"Acting Officer" is "first assistant to that office if the holder *dies, resigns, or is*

*otherwise unable to perform the functions and duties of the office \*\* \* \*.*"  5

U.S.C. § 3345(a)(1) (emphasis added). This provision clearly envisions a complete rather than partial inability to perform the functions and duties of the office.

In the instant case, Sessions did not die, resign, or become absent, and neither was he "otherwise unable to perform the functions and duties of the office" under Section 3345 nor was he "disable[ed]" under Section 508. Both terms are essentially synonymous and must be read *in pari materia*. Sessions was not physically incapacitated or hospitalized in intensive care like Attorney General Ashcroft during the famous hospital bed visit in March 2004 that may have prevented him from carrying out *all* of his duties.

Even if Sessions were partially "disabled" or legally incapacitated from carrying out his functions with respect to a single investigation, as the court below claims, Op. 88 and n.49, he was still the Head of the Department and able to perform all of his other statutory and constitutional duties, including the appointment of a Special Counsel as the *investigator*, while still remaining recused from the *investigation*.

### B. A Single-Issue Recusal Does Not Give Rise to a "Vacancy."

To demonstrate that the single-issue recusal by the Attorney General authorized the DAG to appoint the Special Counsel, the lower court relies on *N.L.R.B. v. Southwest General, Inc.*, 137 S. Ct. 929 (2017) for the proposition that

"the Supreme Court has recognized that [the Federal Vacancies Reform Act] authorized the President 'to appoint acting officials.'" Op. at 85.

But this reasoning improperly expands the precise holding in *S.W. Gen.* The decision solely concerned a *vacancy* in an office, not one Officer's voluntary recusal on a single issue. *S.W. Gen.*, 137 S. Ct. at 934  ("The general rule is that the first assistant to a *vacant* office shall become the acting officer.") (emphasis added).  Moreover, as the lower court noted, that case referenced a predecessor statute enacted by the Second Congress that provided the President with powers to appoint a person "in case of death, absence from the seat of government, or sickness" of the Secretary of State, Treasury, and War departments "until such absence or inability by sickness shall cease." Op. at 84-85.  Again, "absence or inability by sickness" is equivalent to a *de facto* "vacancy" in the office.  *See S.W. Gen.* at 934 (Congress has only authorized the President to bypass Senate advice and consent where an office has gone *vacant.*)

28 U.S.C. § 508 itself is entitled "**Vacancies**." This indicates that the statutory scheme envisions cases in which the office would be missing its Head, rather than having the Head remain serving in his role but voluntarily recused on a single issue.  The case law and other authority on vacancies which the court below cites do not apply to a single-issue recusal.  In short, at single-issue recusal does

35

not give rise to a vacancy in that Office such that, as the court concluded, "there effectively is no Attorney General." Op. at 86.

### C. A Single-Issue Recusal Is Not an "Absence" or "Disability"

A voluntary recusal on a single issue does not give rise to an "absence or disability" under 28 U.S.C. § 508, such that the Deputy Attorney General would become the Acting Attorney General and thereby assume all duties of the Attorney General's Office.

The examples on which the opinion below relies show that the statute and other authorities envision only an entire, wholesale absence or disability, not a recusal to act on a single issue. Ultimately, Attorney General Sessions was still the Head of the Department when Rosenstein appointed a Special Counsel to investigate the President. General Sessions did not resign his office. There was no vacancy, and he was not unavailable or disabled.

The opinion below asserts that "it is well settled . . . that statutory language authorizing one to exercise the duties of an office suffices to make that person an acting officer." Op. at 84. However, the authorities cited by the court for that proposition envisioned an Officer being *entirely* absent or unable to perform. For example, the 1792 Act used the plural "duties," and only applied until a "successor can be appointed." This demonstrates that the statute contemplated a complete

36

absence from office quite unlike the circumstances in this case. *See, e.g.*, Op. at 84-85 (citing Act of May 8, 1792, ch. 37. § 8, 1 Stat. 279, 281). The same is true of the Vacancies Act of 1868, which states that "in case of the death, resignation, absence, or sickness of the head of any executive department, the first or sole assistant thereof shall . . . perform the *duties* of such head *until a successor be appointed*, or such absence or sickness shall cease." Op. at 85 (citing Act of Feb. 20, 1863, ch. 45, 12 Stat. 656, 656 (emphasis added)). There can be no "successor" to Attorney General Sessions because he did not resign his Office, and Rosenstein did not inherit *all* the "duties" because he did not become the Acting Attorney General while Sessions remained Attorney General.

In any event, it is clear from the current statutory text of 28 U.S.C. § 508 that the Congress envisioned a complete absence, not a constructive "absence" or "disability" on a single issue: "In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise *all the duties of that office. . . .*" 28 U.S.C. § 508 (emphasis added). Why else would Congress have given the Acting Attorney General "*all the duties of that office*," if he were only stepping in to fill a gap left by a recusal on a single issue?

The district court in *Moog v United States,* No. MISC. CIV-90-215E, 1991 WL 46518 (W.D.N.Y. Apr. 1, 1991), was faced with this very question. In *Moog*, the issue was the lawfulness of then-Deputy Attorney General William P. Barr's

37

assuming the title and powers of "Acting Attorney General" with respect to certain

enforcement matters due to a conflict of interest by then-Attorney General Richard

Thornburg in that matter. The law in question required that the Attorney General

personally sign Civil Investigative Demands (CIDs) for False Claims Act

investigations. Instead of the AG's signature, the DAG signed the CIDs as "Acting

Attorney General." The district court quickly dispatched the government's

argument that the Attorney General was "disabled" under Section 508:

> The next link in the government's argument—that the Attorney General's
> recusal renders him disabled under 28 U.S.C.§ 508(a)—is equally problematic.
> It is readily apparent that the section contemplates **a complete inability of the
> Attorney General to perform his duties, such that the Deputy Attorney
> General must step in and exercise "all the duties of that office."** Were the
> statute construed as the respondent urges, every conflict of interest on the part
> of an Attorney General would require his deputy to assume all the duties of
> office, clearly a nonsensical result.

*Id*. at *2 (emphasis added). The government's subsequent motion for

reconsideration of the decision was quickly denied. 1991 WL 255371 (Nov. 21,

1991). Notably, the Justice Department did not appeal that decision to the Second

Circuit.

   The court below gave no weight to this decision but concluded that while the

DAG *may* take on *all* the powers of the Attorney General after his recusal on one

issue, this does not mean he will. Op. at 89. Assuming that the discretionary

exercise of power is cabined only to overseeing the Russia investigation, the DAG

may not also assume the Attorney General's appointment power.

The district court's reliance on *United States v. Libby*, 429 F. Supp. 2d 27

(D.D.C. 2006) to the contrary is unavailing, and even the court concedes that it

provides "little additional clarity" on the meaning of 508(a). Op. at 88. There,

U.S. Attorney Patrick Fitzgerald was appointed as a Special Counsel by then-

Deputy Attorney General James Comey as "Acting Attorney General" due to the

Attorney General's recusal to investigate the unauthorized disclosure of classified

information. *Id.* But whether Comey was lawfully the Acting AG under 508(a)

and whether that issue was litigated, Judge Howell correctly observed that the

*Libby* "[c]ourt appears to have assumed rather than concluded that [508(a)] does"

authorize the Deputy to be an Acting AG in a single-recusal situation.[13]

The court discusses the applicability of the Federal Vacancies Reform Act

(FVRA) 5 U.S.C.A. § 3345, a provision expressly referenced in 508. As

---

[13] Moreover, the central issues before the court in *Libby* – whether the delegation of authority to U.S. Attorney Fitzgerald violated 28 U.S.C. §§ 516 and 519, and whether he was a superior officer – did not necessarily require a resolution of whether Comey was an Acting Attorney General. As a sitting U.S. Attorney, confirmed by the Senate, Fitzgerald was simply tasked to investigate the leaks of classified information in much the same way as then-U.S. Attorneys Rod Rosenstein and Ron Machen were tasked by Attorney General Holder to investigate the leaks of classified information in 2012. Attaching the moniker "Special Counsel" to the specialized task Fitzgerald was assigned to do was legally superfluous in determining his status.

previously noted, that statute is triggered when an officer: "dies, resigns, or is otherwise unable to perform…."  Here, the canon of *ejusdem generis* governs, since the statute uses a list that ends with a catch-all term following two specific terms.  Both death and resignation unequivocally make an officer entirely unavailable and the office vacant.  It would undermine the statutory scheme to expand "otherwise unable to perform" to the extreme outer bounds of its meaning (as the opinion below does), to a partial "vacancy," thus failing to read the term in the context of its neighbors, as the canons require.

Finally, the court's reliance by analogy on the practice of trial judges who recuse themselves from adjudicating a particular case is misplaced.  Op. at 89.  Simply put, the recusal of a trial judge due to a conflict or bias, which allows another equally appointed and confirmed trial judge to hear a case, cannot be compared at all to a Deputy Attorney General usurping the constitutional duty of the Attorney General as Head of the Department to appoint a private attorney as a Special Counsel with prosecutorial powers.  A more apt comparison between judicial recusals and the issue in this case would be if all the Justices of the Supreme Court were recused from carrying out their constitutional duty to decide a

case before them.  In that situation, the Rule of Necessity would apply requiring the Court to rule on the case notwithstanding the conflict.[14]

So too here, Attorney General Sessions, even if "disabled" from overseeing the ongoing Russia *investigation,* cannot avoid his constitutional duty to appoint an inferior officer as the *investigator.*  Unlike the judges faced with invoking the Rule of Necessity, Sessions would not have to exercise any decision making authority in the investigation.

### D.  28 U.S.C. § 510 Does Not Allow the Attorney General to Delegate to the DAG Authority to Appoint the Special Counsel, and In Any Event, No Such Delegation Was Made.

The court below asserts that, in the alternative, "even if the DAG were not Acting Attorney General for this matter, he still would have had the authority to appoint the Special Counsel' under 28 U.S.C. § 510.  The court is wrong. Not only did the Special Counsel not rely on Section 510 in the court below; that provision also does not operate automatically.  If invoked, any delegation of powers by the Attorney General under that section requires compliance with Justice Department regulations applicable to such delegations to include a written numbered order, 28

---

[14] *See, e.g.*, *In re Leefe*, 2 Barb. Ch. 39 (N.Y. Ch. 1846) (holding that although a state law forbade the chancellor from deciding cases in which his relative was a party, the state constitution required that the chancellor alone hear appeals from inferior equity tribunals, and thus must decide the case).

C.F.R. § 0.180, and a review of the proposed delegation by the Office of Legal

Counsel.  *Id*. § 0.182

28 U.S.C. § 510 provides:

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

The court's expansive reading of this statute would render the structural

constitutional protections of executive power and the separation of powers a mere

nullity, since the Attorney General could delegate away any and all powers,

including those vested in him under the Appointments Clause, even to a newly

minted GS-11 attorney/employee in the Justice Department.  That cannot be

correct as a general proposition, and most assuredly not with respect to the

delegation of the Attorney General's appointment power.[15]

Indeed, as a leading commentator on the subject noted, the Office of Legal

Counsel has said as much:

> The executive branch has institutional incentives to advocate for the President and department heads having as broad authority as is constitutional—including the power to choose to delegate that authority. Nonetheless, in 2005, the OLC indicated that it was a difficult and unresolved constitutional question whether Congress could ever authorize the delegation of final appointment authority to an officer not listed as an appointment authority in Article II. See Assignment of Certain Functions, 29

---

[15] The Supreme Court has cautioned that the word "any" in a statute does not literally mean "any" but depends on the context.  *See Small v. United States*, 125 S. Ct. 1752, 1754-55 (2005).

Op. O.L.C. at 135. Although the OLC left open the question whether such delegation could occur for inferior officer appointments, the OLC definitively stated that Congress could never authorize the President to delegate the nomination of principal officers subject to the advice and consent of the Senate.

Jennifer Mascott, *Who Are "Officers of the United States"?*, 70 STAN. L. REV. 443, 555 n. 677 (2018).  As the OLC opinion further explained:

> The Excepting Clause was proposed by Gouverneur Morris on the last working day of the Convention. James Madison objected that "[i]t does not go far enough if it be necessary at all— Superior officers below Heads of Departments ought in some cases to have the appointment of the lesser offices." See James Madison, Notes of Debates in the Federal Convention of 1787, at 647 (1893, reprint 1987). Morris responded that there "is no necessity," since "Blank commissions can be sent." Id. Although these statements **might** support a broader view, at a minimum they support the view that a head of a department may use subordinates to carry out appointments **so long as the appointment is submitted to the head of the department for approval and made in the name of the head of the department, upon whom ultimate political accountability must rest.**"

29 Op. O.L.C. at 135-36 (emphasis added).

In short, the Framers rejected the proposal to expand the appointment authority to officers below the Head of the Department, but allowed for subordinates to screen candidates and present them to the head of the department for approval.  The reason for this decision is that the Framers view the broadening unduly the number of officials in the executive branch who can appoint inferior officers will diminish accountability.

Finally, the fact of the matter is that Attorney General Sessions did not even attempt to make any "provision[]" to delegate any of this powers, let alone his

43

appointment power under 28 U.S.C. § 510 to the Deputy Attorney General.  If he were to do so, under Justice Department regulations, the Attorney General would be required to issue a numbered Order to that affect, 28 C.F.R. § 0.180, and have it first reviewed and approved by the Office of Legal Counsel.  28 C.F.R. § 0.182.

In sum, the purported appointment of the Special Counsel violated the Appointments Clause because the Special Counsel was required to be appointed by Attorney General Jeff Sessions and not Deputy Attorney General Rod Rosenstein.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the judgment below be reversed.

Respectfully submitted,

/s/ Paul D. Kamenar
PAUL D. KAMENAR
1629 K STREET, N.W.
SUITE 300
WASHINGTON, DC  20006
(301) 257-9435
paul.kamenar@gmail.com

*Counsel for Andrew Miller*

DATE:  SEPTEMBER 11, 2018

# ADDENDUM



### Office of the Deputy Attorney General
#### Washington, D.C. 20530

## ORDER NO. 3915-2017

### APPOINTMENT OF SPECIAL COUNSEL
### TO INVESTIGATE RUSSIAN INTERFERENCE WITH THE
### 2016 PRESIDENTIAL ELECTION AND RELATED MATTERS

By virtue of the authority vested in me as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515, in order to discharge my responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election, I hereby order as follows:

(a)     Robert S. Mueller III is appointed to serve as Special Counsel for the United States Department of Justice.

(b)     The Special Counsel is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including:

   (i)     any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

   (ii)    any matters that arose or may arise directly from the investigation; and

   (iii)   any other matters within the scope of 28 C.F.R. § 600.4(a).

(c)     If the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters.

(d)     Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.

_____5/17/17_____
Date

Rod J. Rosenstein
Acting Attorney General

bonds sold on or after December 30, 1998, and before March 1, 1999.

**Cynthia E. Grigsby,**
*Chief, Regulations Unit, Assistant Chief Counsel (Corporate).*
[FR Doc. 99–17297 Filed 7–8–99;8:45am]
BILLING CODE 4830–01–P

## DEPARTMENT OF JUSTICE

### Office of the Attorney General

### 28 CFR Parts 0 and 600

[A.G. Order No. 2232–99]

### Office of Special Counsel

**AGENCY:** Department of Justice.
**ACTION:** Final rule.

**SUMMARY:** This order amends the Code of Federal Regulations to provide regulations concerning Attorney General appointment of Special Counsel to investigate and, when appropriate, to prosecute matters when the Attorney General concludes that extraordinary circumstances exist such that the public interest would be served by removing a large degree of responsibility for a matter from the Department of Justice. These regulations replace the procedures for appointment of independent counsel pursuant to the Independent Counsel Reauthorization Act of 1994.

**EFFECTIVE DATES:** July 1, 1999.

**FOR FURTHER INFORMATION CONTACT:** John C. Keeney, Deputy Assistant Attorney General, Criminal Division, U.S. Department of Justice, Washington, D.C. 20530, (202) 514–2621.

**SUPPLEMENTARY INFORMATION:**

## Background

The Attorney General is promulgating these regulations to replace the procedures set out in the Independent Counsel Reauthorization Act of 1994. These regulations seek to strike a balance between independence and accountability in certain sensitive investigations, recognizing that there is no perfect solution to the problem. The balance struck is one of day-to-day independence, with a Special Counsel appointed to investigate and, if appropriate, prosecute matters when the Attorney General concludes that extraordinary circumstances exist such that the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice. The Special Counsel would be free to structure the investigation as he or she wishes and to exercise independent prosecutorial

discretion to decide whether charges should be brought, within the context of the established procedures of the Department. Nevertheless, it is intended that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused in the matter); thus, the regulations explicitly acknowledge the possibility of review of specific decisions reached by the Special Counsel.

The regulations also remove § 0.14, setting forth procedures for Special Independent Counsels for members of Congress. The regulations in that section have been suspended since April 19, 1989. 54 FR 15752.

**Section-by-Section Discussion**

*Section 600.1    Grounds for Appointing a Special Counsel*

''The Attorney General, or in cases in which the Attorney General is recused, the Acting Attorney General, will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted and—
(a) That investigation or prosecution of that person or matter by a United States Attorney's Office or litigating Division of the Department of Justice would present a conflict of interest for the Department or other extraordinary circumstances; and
(b) That under the circumstances, it would be in the public interest to appoint an outside Special Counsel to assume responsibility for the matter.''

*Section 600.2    Alternatives Available to the Attorney General*

''When matters are brought to the attention of the Attorney General that might warrant consideration of appointment of a Special Counsel, the Attorney General may:
(a) Appoint a Special Counsel;
(b) Direct that an initial investigation, consisting of such factual inquiry or legal research as the Attorney General deems appropriate, be conducted in order to better inform the decision; or
(c) Conclude that under the circumstances of the matter, the public interest would not be served by removing the investigation from the normal processes of the Department, and that the appropriate component of the Department should handle the matter. If the Attorney General reaches this conclusion, he or she may direct that appropriate steps be taken to mitigate any conflicts of interest, such as recusal of particular officials.''

Discussion

There are occasions when the facts create a conflict so substantial, or the exigencies of the situation are such that any initial investigation might taint the subsequent investigation, so that it is appropriate for the Attorney General to immediately appoint a Special Counsel. In other situations, some initial investigation, whether factual or legal, may be appropriate to better inform the Attorney General's decision. This provision is intended to make it clear that a variety of approaches, even in cases that might create an apparent conflict of interest, may be appropriate, depending on the facts of the matter.

*Section 600.3    Qualifications of the Special Counsel*

''(a) An individual named as Special Counsel shall be a lawyer with a reputation for integrity and impartial decisionmaking, and with appropriate experience to ensure both that the investigation will be conducted ably, expeditiously and thoroughly, and that investigative and prosecutorial decisions will be supported by an informed understanding of the criminal law and Department of Justice policies. The Special Counsel shall be selected from outside the United States Government. Special Counsels shall agree that their responsibilities as Special Counsel shall take first precedence in their professional lives, and that it may be necessary to devote their full time to the investigation, depending on its complexity and the stage of the investigation.

''(b) The Attorney General shall consult with the Assistant Attorney General for Administration to ensure an appropriate method of appointment, and to ensure that a Special Counsel undergoes an appropriate background investigation and a detailed review of ethics and conflicts of interest issues. A Special Counsel shall be appointed as a 'confidential employee' as defined in 5 U.S.C. 7511(b)(2)(C).''

*Section 600.4    Jurisdiction*

''(a) *Original Jurisdiction.* The jurisdiction of a Special Counsel shall be established by the Attorney General. The Special Counsel will be provided with a specific factual statement of the matter to be investigated. The jurisdiction of a Special Counsel shall also include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses;

and to conduct appeals arising out of the matter being investigated and/or prosecuted.

''(b) *Additional Jurisdiction.* If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she shall consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere.''

Discussion

Under these regulations, it is intended that a Special Counsel's jurisdiction will be stated as an investigation of specific facts. The regulations also recognize, however, that accommodations can be made as necessary throughout the course of the investigation, with the Attorney General's approval. This provision establishes a protocol whereby Special Counsels are provided with an appropriate description of the boundaries of their investigation, with the full recognition that adjustments to that jurisdiction may be required.

Paragraph (b) establishes a single procedure through which a variety of different jurisdictional issues can be resolved. For example, a Special Counsel assigned responsibility for an alleged false statement about a government program may request additional jurisdiction to investigate allegations of misconduct with respect to the administration of that program; a Special Counsel may conclude that investigating otherwise unrelated allegations against a central witness in the matter is necessary to obtain cooperation; or a Special Counsel may come across evidence of additional, unrelated crimes by targets of his or her investigation. Rather than leaving the issue to argument and misunderstanding as to whether the new matters are included within a vague category of ''related matters,'' the regulations clarify that the decision as to which component would handle such new matters would be made by the Attorney General. The Special Counsel would report such matters to the Attorney General, and the Attorney General would decide whether to grant the Special Counsel jurisdiction over the additional matters.

''(c) *Civil and Administrative Jurisdiction.* If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action. A Special Counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General.''

Discussion

Paragraph (c) is intended to clarify that the Special Counsel's jurisdiction will cover only the criminal aspects of the matters within his or her jurisdiction, unless other jurisdiction is specifically granted by the Attorney General.

*Section 600.5    Staff*

''A Special Counsel may request the assignment of appropriate Department employees to assist the Special Counsel. The Department shall gather and provide the Special Counsel with the names and resumes of appropriate personnel available for detail. The Special Counsel may also request the detail of specific employees, and the office for which the designated employee works shall make reasonable efforts to accommodate the request. The Special Counsel shall assign the duties and supervise the work of such employees while they are assigned to the Special Counsel. If necessary, the Special Counsel may request that additional personnel be hired or assigned from outside the Department. All personnel in the Department shall cooperate to the fullest extent possible with the Special Counsel.''

Discussion

This provision, providing for the assignment of appropriate personnel to assist the Special Counsel, also includes assignment of needed investigative resources from the Federal Bureau of Investigation. It is anticipated that most personnel will be Department of Justice employees provided by detail to the Special Counsel, although the regulation provides for additional employment from outside the Department when necessary.

*Section 600.6    Powers and Authority*

''Subject to the limitations in the following paragraphs, the Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney. Except as provided in this part, the Special Counsel shall determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities.''

*Section 600.7    Conduct and Accountability*

''(a) A Special Counsel shall comply with the rules, regulations, procedures, practices and policies of the Department of Justice. He or she shall consult with appropriate offices within the Department for guidance with respect to established practices, policies and procedures of the Department, including ethics and security regulations and procedures. Should the Special Counsel conclude that the extraordinary circumstances of any particular decision would render compliance with required review and approval procedures by the designated Departmental component inappropriate, he or she may consult directly with the Attorney General.''

Discussion

Review and approval procedures are the way in which the Department typically addresses the most sensitive legal and policy issues facing its prosecutors. Such matters are usually not dealt with by mandatory substantive rules; rather, the Department recognizes that even the most controversial and risky investigative or prosecutorial steps might in extraordinary circumstances be justified. Therefore, such issues are generally handled by requiring a variety of levels of review and approval before the step can be taken. Were Special Counsels to be exempt from these procedural requirements, they would be left without relevant controls and without Departmental guidance in the most sensitive situations.

There are often sound institutional reasons for review and approval provisions that transcend the merits of any particular case. For example, the Department has concluded over time that the long-term interests in case law development, served by the requirement that the Solicitor General personally approve Departmental appeals, may outweigh the importance of any single prosecution. Finally, requiring compliance with review and approval procedures ensures that the Department's institutional judgment will be available to inform the Special Counsel's decisionmaking process in the particular case.

This provision therefore will allow a wide range of independent decisionmaking by the Special Counsel, while at the same time it will help to guard against a Special Counsel becoming too insulated and narrow in

his or her view of the matter under investigation. Most review and approval procedures are conducted by and through long-term career Departmental officials with substantial and invaluable institutional memory and historical perspective.

At the same time, this provision permits the Special Counsel in extraordinary circumstances to proceed without complying with the Department's required review and approval procedures by consulting with the Attorney General. This provides a substantial degree of independent decisionmaking to the Special Counsel, while enhancing his or her accountability for the decision. Should the Special Counsel determine that the extraordinary circumstances of a particular decision make it inappropriate to comply with the established rules, regulations, procedures, practices and policies of the Department, the review and approval process may be bypassed through direct consultation with the Attorney General.

''(b) The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department. However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that review, the Attorney General will give great weight to the views of the Special Counsel. If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).''

Discussion

Paragraph (b) permits the Attorney General to determine, after a review in which substantial deference is given to the views of the Special Counsel, that an action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued.

''(c) The Special Counsel and staff shall be subject to disciplinary action for misconduct and breach of ethical duties under the same standards and to the same extent as are other employees of the Department of Justice. Inquiries into such matters shall be handled through the appropriate office of the Department upon the approval of the Attorney General.

(d) The Special Counsel may be disciplined or removed from office only by the personal action of the Attorney General. The Attorney General may remove a Special Counsel for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies. The Attorney General shall inform the Special Counsel in writing of the specific reason for his or her removal.''

Discussion

Paragraphs (c) and (d) provide protection for a Special Counsel by providing that the Attorney General may remove the Special Counsel only for good cause, several examples of which are provided in the regulation. Violation of Departmental policies is specifically identified as a ground that may warrant removal. The willful violation of some policies might warrant removal or other disciplinary action, and a series of negligent or careless overlooking of important policies might similarly warrant removal or other disciplinary action. Such conduct also would be encompassed within the articulated standard of misconduct or dereliction of duty. There are, of course, other violations of Departmental policies and guidelines that would not ordinarily be grounds for removal or other disciplinary action.

Section 600.8  Notification and Reports by the Special Counsel

''(a) Budget. (1) A Special Counsel shall be provided all appropriate resources by the Department of Justice. Within the first 60 days of his or her appointment, the Special Counsel shall develop a proposed budget for the current fiscal year with the assistance of the Justice Management Division for the Attorney General's review and approval. Based on the proposal, the Attorney General shall establish a budget for the operations of the Special Counsel. The budget shall include a request for assignment of personnel, with a description of the qualifications needed.

(2) Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation, and provide a budget request for the following year. The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year.''

Discussion

The annual report to the Attorney General and budget request for the coming year will help to ensure that a Special Counsel investigation does not continue indefinitely; it will be reviewed at least annually to determine whether the investigation should continue, or whether it has reached a point where it should be closed or where responsibility for the matter can be returned to the normal processes of the Department. This annual review will provide an opportunity for the Special Counsel to present his or her budget request for the upcoming year as well. It should be emphasized that this annual report is intended to be only a status report. The Special Counsel will not be subject to the day-to-day supervision of the Attorney General or any other Departmental official, and the annual report will not serve as a vehicle for ongoing supervision. Rather, the Attorney General will use the report to determine whether the investigation should continue, and what the budget for the coming year should be. For example, there may be no need for the Special Counsel to remain in office to handle final details, such as a routine appeal following a conviction.

''(b) Notification of Significant Events. The Special Counsel shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports.''

Discussion

Paragraph (b) requires Special Counsels to notify the Attorney General in certain circumstances. Those circumstances are defined using the same standard as that governing United States Attorneys, who are required to notify the Attorney General or other Department officials before seeking an indictment in sensitive cases and at other significant investigative steps. A Special Counsel will be dealing with issues that are sensitive, with many possible repercussions, and experience has shown that such prosecutions are often as sensitive legally as they are politically. Given this sensitivity, notification of proposed indictments and other significant events in the course of the investigation, with the resulting opportunity for consultation, is a critical part of the mechanism through which the Attorney General can discharge his or her responsibilities with respect to the investigation.

''(c) Closing Documentation. At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel.''

Discussion

Much legitimate concern has been expressed about the Final Report requirement of the Independent Counsel Act, with respect to both the incentives

it creates to over-investigate a matter and the fact that, since it often becomes a public document, it can do harm to legitimate privacy interests. On the other hand, it is appropriate for any federal official to provide a written record upon completion of an assignment, both for historical purposes and to enhance accountability—particularly a federal official who has functioned with substantial independence and little supervision. In major cases, federal prosecutors commonly document their decisions not to pursue a case, explaining the factual and legal reasons for the conclusions they have reached.

The principal source of the problems with the Final Report requirement as set forth in the Independent Counsel Act is the fact that the Report typically has been made public, unlike the closing documentation of any other criminal investigation. This single fact both provides an incentive to over-investigate, in order to avoid potential public criticism for not having turned over every stone, and creates potential harm to individual privacy interests.

Therefore, these regulations impose a limited reporting requirement on all Special Counsels, in the form of a summary final report to the Attorney General. This report will be handled as a confidential document, as are internal documents relating to any federal criminal investigation. The interests of the public in being informed of and understanding the reasons for the actions of the Special Counsel will be addressed in the final set of reporting requirements, discussed below.

### Section 600.9  Notification and Reports by the Attorney General

''(a) The Attorney General will notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress, with an explanation for each action—

(1) Upon appointing a Special Counsel;

(2) Upon removing any Special Counsel; and

(3) Upon conclusion of the Special Counsel's investigation, including, to the extent consistent with applicable law, a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued.

(b) The notification requirement in paragraph (a)(1) of this section may be tolled by the Attorney General upon a finding that legitimate investigative or privacy concerns require

confidentiality. At such time as confidentiality is no longer needed, the notification will be provided.

(c) The Attorney General may determine that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions. All other releases of information by any Department of Justice employee, including the Special Counsel and staff, concerning matters handled by Special Counsels shall be governed by the generally applicable Departmental guidelines concerning public comment with respect to any criminal investigation, and relevant law.''

### Discussion

To help ensure congressional and public confidence in the integrity of the process, the regulations impose on the Attorney General these reporting requirements to the Judiciary Committees of the Congress. These reports will occur on three occasions: on the appointment of a Special Counsel, on the Attorney General's decision to remove a Special Counsel, and on the completion of the Special Counsel's work. These reports will be brief notifications, with an outline of the actions and the reasons for them.

### Section 600.10 No Creation of Rights

''The regulations in this part are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative.''

### Certifications and Determinations

#### Administrative Procedure Act

This rule relates to matters of agency management or personnel, and is therefore exempt from the usual requirements of prior notice and comment and a 30-day delay in the effective date. *See* 5 U.S.C. 553(a)(2). Moreover, to the extent that rulemaking procedures would otherwise be applicable, the Department finds that this rule would be exempted from the requirements of prior notice and comment as a rule of agency organization, procedure, or practice. *See* 5 U.S.C. 553(b)(A). Similarly, the effective date of the rule need not be delayed for 30 days after publication because the rule is not a ''substantive rule.'' *See* 5 U.S.C. 553(d); 5 U.S.C. 552(a)(1)(D). In any event, because the provisions of the Independent Counsel Reauthorization Act of 1994 expire on June 30, 1999, the Attorney General has determined that it is imperative to have

these rules governing the appointment and service of a Special Counsel in place as soon as possible. Accordingly, even if the rule were not exempted from the usual requirements of prior notice and comment and a 30-day delay in the effective date, there would be ''good cause'' for issuing this rule without prior notice and comment and without a 30-day delay in the effective date. *See* 5 U.S.C. 553(b)(B); 5 U.S.C. 553(d)(3).

#### Small Business Regulatory Enforcement Fairness Act of 1996

This rule is not a major rule as defined by section 251 of the Small Business Regulatory Enforcement Fairness Act of 1996, 5 U.S.C. 804. It is a rule relating to agency management or personnel and is therefore excluded from the scope of a covered ''rule'' for purposes of Chapter 8 of Title 5, U.S.C. *See* 5 U.S.C. 804(3)(B). Moreover, to the extent that this rule would be considered to be a rule of agency organization, procedure, or practice, it is excluded from the scope of a covered ''rule'' pursuant to 5 U.S.C. 804(3)(C). The provisions of Part 600 relate to the Attorney General's appointment of a Special Counsel as an employee of the Department of Justice, the procedures for defining the jurisdiction of the Special Counsel, and the requirements for consultation or approval within the Department. If the Attorney General determines, in some particular case, to appoint a Special Counsel, the Special Counsel would assume responsibility for an investigation or prosecution that would otherwise be under the responsibility of a litigating Division of the Department or a United States Attorney's Office, but the Special Counsel would nevertheless be serving under the Attorney General's authority as provided in this rule. For these reasons, the Department has determined that this rule does not substantially affect the rights or obligations of non-agency parties.

Accordingly, because this action is not a covered ''rule,'' it is exempt from the requirement for the Department to submit a report to each House of Congress and to the Comptroller General before this rule can take effect, as provided in 5 U.S.C. 801(a)(1).

#### Regulatory Flexibility Act

The Attorney General, in accordance with the Regulatory Flexibility Act, 5 U.S.C. 605(b), has reviewed this regulation and, by approving it, certifies that this regulation will not have a significant economic impact on a substantial number of small entities.

### Executive Order 12866

This regulation has been drafted and reviewed in accordance with Executive Order 12866, Regulatory Planning and Review. The Department of Justice has determined that this is not a ''significant regulatory action'' under section 3(f) of Executive Order 12866, and that it relates to a matter of agency organization, management, or personnel. See Executive Order 12866, 3(d)(3). Accordingly, this rule has not been reviewed by the Office of Management and Budget.

### Executive Order 12612

This regulation will not have substantial direct effects on the States, on the relationship between the national government and the States, or on distribution of power and responsibilities among the various levels of government. Therefore, in accordance with Executive Order 12612, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

### Executive Order 12988—Civil Justice Reform

This regulation meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### Unfunded Mandates Reform Act of 1995

This regulation will not result in the expenditure by State, local, and tribal government, in the aggregate, or by the private sector, of $100,000,000 or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

### List of Subjects

#### 28 CFR Part 0

Authority delegations (Government agencies), Government employees, Organization and functions (Government agencies), Whistleblowing.

#### 28 CFR Part 600

Authority delegations (Government agencies), Conflict of interests, Crime, Government employees, Investigations.

Accordingly, by virtue of the authority vested in me as Attorney General, including 5 U.S.C. 301 and 28 U.S.C. 509 and 510, chapters I and VI of title 28 of the Code of Federal Regulations, are amended as follows:

## PART 0—ORGANIZATION OF THE DEPARTMENT OF JUSTICE

1. The authority citation for part 0 continues to read as follows:

**Authority:** 5 U.S.C. 301; 28 U.S.C. 509, 510, 515–519.

### § 0.14   [Removed]

2. Section 0.14 is removed.
3. Part 600 is revised to read as follows:

## PART 600—GENERAL POWERS OF SPECIAL COUNSEL

Sec.
600.1   Grounds for appointing a Special Counsel.
600.2   Alternatives available to the Attorney General.
600.3   Qualifications of the Special Counsel.
600.4   Jurisdiction.
600.5   Staff.
600.6   Powers and authority.
600.7   Conduct and accountability.
600.8   Notification and reports by the Special Counsel.
600.9   Notification and reports by the Attorney General.
600.10   No creation of rights.

**Authority:** 5 U.S.C. 301; 28 U.S.C. 509, 510, 515–519.

### § 600.1   Grounds for appointing a Special Counsel.

The Attorney General, or in cases in which the Attorney General is recused, the Acting Attorney General, will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted and—

(a) That investigation or prosecution of that person or matter by a United States Attorney's Office or litigating Division of the Department of Justice would present a conflict of interest for the Department or other extraordinary circumstances; and

(b) That under the circumstances, it would be in the public interest to appoint an outside Special Counsel to assume responsibility for the matter.

### § 600.2   Alternatives available to the Attorney General.

When matters are brought to the attention of the Attorney General that might warrant consideration of appointment of a Special Counsel, the Attorney General may:

(a) Appoint a Special Counsel;

(b) Direct that an initial investigation, consisting of such factual inquiry or legal research as the Attorney General deems appropriate, be conducted in order to better inform the decision; or

(c) Conclude that under the circumstances of the matter, the public interest would not be served by removing the investigation from the normal processes of the Department, and that the appropriate component of the Department should handle the matter. If the Attorney General reaches this conclusion, he or she may direct that appropriate steps be taken to mitigate any conflicts of interest, such as recusal of particular officials.

### § 600.3   Qualifications of the Special Counsel.

(a) An individual named as Special Counsel shall be a lawyer with a reputation for integrity and impartial decisionmaking, and with appropriate experience to ensure both that the investigation will be conducted ably, expeditiously and thoroughly, and that investigative and prosecutorial decisions will be supported by an informed understanding of the criminal law and Department of Justice policies. The Special Counsel shall be selected from outside the United States Government. Special Counsels shall agree that their responsibilities as Special Counsel shall take first precedence in their professional lives, and that it may be necessary to devote their full time to the investigation, depending on its complexity and the stage of the investigation.

(b) The Attorney General shall consult with the Assistant Attorney General for Administration to ensure an appropriate method of appointment, and to ensure that a Special Counsel undergoes an appropriate background investigation and a detailed review of ethics and conflicts of interest issues. A Special Counsel shall be appointed as a ''confidential employee'' as defined in 5 U.S.C. 7511(b)(2)(C).

### § 600.4   Jurisdiction.

(a) *Original jurisdiction.* The jurisdiction of a Special Counsel shall be established by the Attorney General. The Special Counsel will be provided with a specific factual statement of the matter to be investigated. The jurisdiction of a Special Counsel shall also include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted.

(b) *Additional jurisdiction.* If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters

assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she shall consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere.

(c) *Civil and administrative jurisdiction.* If in the course of his or her investigation the Special Counsel determines that administrative remedies, civil sanctions or other governmental action outside the criminal justice system might be appropriate, he or she shall consult with the Attorney General with respect to the appropriate component to take any necessary action. A Special Counsel shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General.

§ 600.5  **Staff.**

A Special Counsel may request the assignment of appropriate Department employees to assist the Special Counsel. The Department shall gather and provide the Special Counsel with the names and resumes of appropriate personnel available for detail. The Special Counsel may also request the detail of specific employees, and the office for which the designated employee works shall make reasonable efforts to accommodate the request. The Special Counsel shall assign the duties and supervise the work of such employees while they are assigned to the Special Counsel. If necessary, the Special Counsel may request that additional personnel be hired or assigned from outside the Department. All personnel in the Department shall cooperate to the fullest extent possible with the Special Counsel.

§ 600.6  **Powers and authority.**

Subject to the limitations in the following paragraphs, the Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney. Except as provided in this part, the Special Counsel shall determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities.

§ 600.7  **Conduct and accountability.**

(a) A Special Counsel shall comply with the rules, regulations, procedures, practices and policies of the Department of Justice. He or she shall consult with

appropriate offices within the Department for guidance with respect to established practices, policies and procedures of the Department, including ethics and security regulations and procedures. Should the Special Counsel conclude that the extraordinary circumstances of any particular decision would render compliance with required review and approval procedures by the designated Departmental component inappropriate, he or she may consult directly with the Attorney General.

(b) The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department. However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that review, the Attorney General will give great weight to the views of the Special Counsel. If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).

(c) The Special Counsel and staff shall be subject to disciplinary action for misconduct and breach of ethical duties under the same standards and to the same extent as are other employees of the Department of Justice. Inquiries into such matters shall be handled through the appropriate office of the Department upon the approval of the Attorney General.

(d) The Special Counsel may be disciplined or removed from office only by the personal action of the Attorney General. The Attorney General may remove a Special Counsel for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies. The Attorney General shall inform the Special Counsel in writing of the specific reason for his or her removal.

§ 600.8  **Notification and reports by the Special Counsel.**

(a) *Budget.* (1) A Special Counsel shall be provided all appropriate resources by the Department of Justice. Within the first 60 days of his or her appointment, the Special Counsel shall develop a proposed budget for the current fiscal year with the assistance of the Justice Management Division for the Attorney General's review and approval. Based on the proposal, the Attorney General shall establish a budget for the operations of the Special Counsel. The budget shall include a request for

assignment of personnel, with a description of the qualifications needed.

(2) Thereafter, 90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation, and provide a budget request for the following year. The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year.

(b) *Notification of significant events.* The Special Counsel shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports.

(c) *Closing documentation.* At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel.

§ 600.9  **Notification and reports by the Attorney General.**

(a) The Attorney General will notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress, with an explanation for each action—

(1) Upon appointing a Special Counsel;

(2) Upon removing any Special Counsel; and

(3) Upon conclusion of the Special Counsels investigation, including, to the extent consistent with applicable law, a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued.

(b) The notification requirement in paragraph (a)(1) of this section may be tolled by the Attorney General upon a finding that legitimate investigative or privacy concerns require confidentiality. At such time as confidentiality is no longer needed, the notification will be provided.

(c) The Attorney General may determine that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions. All other releases of information by any Department of Justice employee, including the Special Counsel and staff, concerning matters handled by Special Counsels shall be governed by the generally applicable Departmental guidelines concerning public comment with respect to any criminal investigation, and relevant law.

### § 600.10   No creation of rights.

The regulations in this part are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative.

Dated: June 30, 1999.

**Janet Reno,**

*Attorney General.*

[FR Doc. 99–17327 Filed 7–8–99; 8:45 am]

BILLING CODE 4410–AR–P

---

## DEPARTMENT OF JUSTICE

### 48 CFR Part 2832

[Justice Acquisition Circular 99–1]

RIN 1105–AA68

### Amendment to the Justice Acquisition Regulations (JAR) Regarding: Electronic Funds Transfer

**AGENCY:** Justice Management Division, Justice.

**ACTION:** Final rule.

**SUMMARY:** The Department of Justice is amending the Justice Acquisition Regulations (JAR) to provide flexibility to contractors in the timing of receipt of Electronic Funds Transfer (EFT) information from them. The Debt Collection Improvement Act of 1996, Public Law (P.L.) 104–134, mandates payment by EFT in most situations. In order to make the payment by EFT, the Department needs certain information from contractors. This rule gives the Department's contracting officers discretion in determining when contractors must submit the required information. Without the changes made by this rule, contractors would have to submit their EFT information no later than 15 days prior to their first request for payment.

**DATES:** Effective date: This rule is effective July 9, 1999.

**FOR FURTHER INFORMATION CONTACT:** Janis A. Spostao, Procurement Executive, Justice Management Division (202) 514–3103.

**SUPPLEMENTARY INFORMATION:**

### Why Is the Department Changing the Justice Acquisition Regulations?

Public Law 104–134 amended 31 U.S.C. section 3332, to require that beginning January 2, 1999, all Federal payments (other than payments under the Internal Revenue Code of 1986) shall be made by EFT. The Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council are responsibilities for issuing Federal Acquisition Circulars (FACs) and the Federal Acquisition Regulations (FAR) which are binding on other Federal Agencies. On March 4, 1999, these councils published Federal Acquisition Circular (FAC) 97–11, in the **Federal Register** (64 FR 10538–10544) as a final rule with an effective date of May 3, 1999. A portion of this final rule—Item IV—Electronic Funds Transfer— amended the FAR to address the use of EFT for Federal contract payments and to facilitate the implementation of P.L. 104–134.

### Who Is Affected by the Changes Made by Item IV—Electronic Funds Transfer?

Before the latest FAR revision, contractors who sell to Federal agencies were required to furnish EFT information no later than 15 days prior to the submission of their first request for payment. Some contractors furnish their EFT information by registering in the Central Contractor Registration database. Agencies use that database to obtain EFT information. Other contractors are not registered in the Central Contractor Registration database, or agencies elect not to use the database. Under those circumstances, agencies collect EFT information directly from contractors.

### What Changes Does This Rule Make?

When collecting EFT information directly from contractors, Item IV of FAC 97–11 allows the heads of Federal agencies to issue procedures that allow contracting officers discretion in determining when contractors' EFT information must be submitted in order to comply with P.L. 104–134 and to make timely payments. In the absence of this regulation, contractors of the Department would have to submit EFT information no later than 15 days prior to the submission of the first request for payment. This rule gives the Department's contracting officers discretion in determining when contractors must submit the required information. This flexibility will allow components of the Department to receive the EFT information with the first invoice, rather than 15 days before the first invoice. For those components that adopt such a procedure, contractors will only have to make one submission (the EFT information along with the invoice) rather than two submissions (the EFT information and—at least 15 days later—the invoice). The flexibility proposed by this rule should be a benefit to contractors.

### Regulatory Certifications

*Administrative Procedure Act, 5 U.S.C. 553*

This rule enhances the ability of Department contracting officers to allow contractors flexibility as to when to submit information required by current statute law and regulations. Further, this rule imposes no new restrictions. Accordingly, the Department of Justice finds good cause for exempting this rule from the provision of the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, the opportunity for public comment, and delay in effective date.

*Regulatory Flexibility Act*

The Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council published FAC 97–11 on March 4, 1999 at 64 FR 10538. In conjunction with the publication of that final rule, these councils performed a Final Regulatory Flexibility Analysis and submitted a copy to the Chief Counsel for Advocacy of the Small Business Administration.

The Assistant Attorney General for Administration in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and by approving it certifies that this regulation will not have a significant economic impact on a substantial number of small entities because this regulation merely sets forth internal procedures of the Department relating to the timing of receipt of EFT information from contractors.

*Executive Order 12866*

This regulation has been drafted and reviewed in accordance with Executive Order 12866, ''Regulatory Planning and Review'', § 1(b), Principles of Regulation. The Department of Justice has determined that this action is not a ''significant regulatory action'' under Executive Order 12866, § 3(f), and accordingly this rule has not been reviewed by the Office of Management and Budget.

*Executive Order 12612*

This regulation will not have substantial direct effects on the States, on the relationship between the national government and the States, or on distribution of power and responsibilities among the various levels of government. Therefore, in accordance with Executive Order 12612, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

# Subpart AA—Orders of the Attorney General

Source: Order No. 460-71, 36 FR 12096, June 25, 1971, unless otherwise noted.

⬆ Back to Top

# §0.180   Documents designated as orders.

All documents relating to the organization of the Department or to the assignment, transfer, or delegation of authority, functions, or duties by the Attorney General or to general departmental policy shall be designated as orders and shall be issued only by the Attorney General in a separate, numbered series. Classified orders shall be identified as such, included within the numbered series, and limited to the distribution provided for in the order or determined by the Assistant Attorney General for Administration. All documents amending, modifying, or revoking such orders, in whole or in part, shall likewise be designated as orders within such numbered series, and no other designation of such documents shall be used.

⬆ Back to Top

# §0.181   Requirements for orders.

Each order prepared for issuance by or approval of the Attorney General shall be given a suitable title, shall contain a clear and concise statement explaining the substance of the order, and shall cite the authority for its issuance.

⬆ Back to Top

# §0.182   Submission of proposed orders to the Office of Legal Counsel.

All orders prepared for the approval or signature of the Attorney General shall be submitted to the Office of Legal Counsel for approval as to form and legality and consistency with existing orders.

Back to Top

# §0.183   Distribution of orders.

The distribution of orders, unless otherwise provided by the Attorney General, shall be determined by the Assistant Attorney General for Administration.

Back to Top

## CERTIFICATE OF SERVICE AND COMPLIANCE

Pursuant to FRAP 25(d), the undersigned hereby certifies that on the 12th day of September, 2018, he caused the foregoing Corrected Brief of Appellant Andrew Miller and Appendix to be filed electronically with the Clerk of the Court by using CM/ECF system.  The participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

The undersigned further certifies that the foregoing Brief of Appellant complies with FRAP 27(d)(2)(A) and contains 10,865 words, as determined by Microsoft Word 2010 and complies with FRAP 32(a) (5)-(6) because it has been prepared with proportionally spaced font typeface using Microsoft Word 2010 in 14-point Times New Roman.

*/s/Paul D. Kamenar*
Paul D. Kamenar